392 So.2d 1348 (1980)
FLORIDA INSURANCE GUARANTY ASSOCIATION, Appellant,
v.
Minnie Powell JOHNSON, Formerly Known As Minnie Powell, Appellee.
No. 80-11.
District Court of Appeal of Florida, Fifth District.
December 24, 1980.
Rehearing Denied February 3, 1981.
*1349 Ira Wm. McCollum, Jr., of Pitts, Eubanks & Ross, P.A., Orlando, for appellant.
James R. Lavigne, Winter Park, for appellee.
COWART, Judge.
This is an insurance case involving "stacking" of uninsured or underinsured motorist coverage.
On March 23, 1977, Marvin Albert Fehring was operating his vehicle when it collided with a vehicle owned by Carrie D. Fudge and operated with her permission by Minnie Powell Johnson. Johnson, whose damages could be in excess of $50,000, was not a resident of the household of Fudge nor a member of her family. Everyone had insurance. Fehring had liability with Allstate with $10,000 coverage. Fudge's policy with Reserve Insurance Company (for whom appellant Florida Insurance Guaranty Association has been substituted) covered the period from June 6, 1976, to June 6, 1977, and provided uninsured motorist limits of $15,000 per person plus medical benefits on both the vehicle involved in this collision and on another vehicle owned by Fudge. Johnson's own insurance with General Accident covered one vehicle for the period from February 1, 1977, through February 1, 1978, and provided uninsured motorist limits of $10,000 and personal injury protection and medical benefits. Allstate tendered Johnson $10,000. General paid Johnson $5,000 PIP benefits and $1,000 medical benefits. Reserve paid Johnson $1,000 medical benefits.
*1350 On these undisputed facts the trial court held that Johnson was entitled to Reserve's coverage of $15,000 on Fudge's vehicle Johnson was operating and upon this Johnson was entitled to add or "stack" Reserve's coverage of $15,000 on Fudge's vehicle which was not involved in this collision; upon this $30,000 of coverage Johnson was held entitled to "stack" the $10,000 of uninsured motorist coverage from her own insurer General for a total uninsured motorist coverage of $40,000. The trial court also ruled that General, by providing $10,000 or 1/4th of the $40,000 uninsured motorist coverage, was entitled to setoff $2,500 or 1/4th of the $10,000 liability coverage provided by Allstate plus the $5,000 PIP and the $1,000 medical paid by General, for a total of $8,500, against its $10,000 of uninsured motorist coverage, leaving General with a net uninsured motorist coverage exposure of $1,500. General accepted this decision, settled with Johnson and did not appeal. Reserve appeals and argues that Johnson is entitled to Reserve's $15,000 of coverage on the vehicle she was operating, but not to the coverage on Fudge's second vehicle, and that the anti-stacking statute prohibits Johnson, whose own vehicle was not involved in this collision, from recovering from her own insurer General and, consequently, the combined paid coverage of Allstate's $10,000 of liability, General's $5,000 PIP and $1,000 medical and Reserve's $1,000 medical, totaling $17,000, should be offset against Reserve's $15,000 of uninsured coverage, leaving no sum available to Johnson from Reserve for which appellant should be responsible.
In cases involving the stacking of uninsured motorist coverage two statutes are involved: The uninsured motorist statute, Section 627.727, Florida Statutes, which requires uninsured motorist coverage to be offered with automobile liability insurance, and Section 627.4132, Florida Statutes,[1] commonly called the anti-stacking statute, which generally attempts to limit an insured to coverage on the vehicle involved in the accident and to prohibit various other insurance coverages from being added to or stacked upon that coverage.[2]
The first question is whether Johnson can recover from Reserve both the $15,000 uninsured motorist coverage on the vehicle she was operating and the $15,000 similar coverage on Fudge's vehicle which was not involved in this accident.
While the anti-stacking statute purports to apply to all claims arising out of accidents occurring on or after its effective date on October 1, 1976, and this accident occurred after that date, nevertheless, the statute does not apply to the issue of stacking the multiple vehicle coverages under Fudge's policy with Reserve because that policy was renewed on June 6, 1976, before the effective date of the statute, and to apply the statute would unconstitutionally impair this insurance contract. Dewberry v. Auto Owners Insurance Co., 363 So.2d 1077 (Fla. 1978); Hausler v. State Farm Mutual Automobile Insurance Co., 374 So.2d 1037 (Fla. 2nd DCA 1979); Bunch v. Hartford Accident and Indemnity Co., 370 So.2d 455 (Fla. 4th DCA 1979).
The term "stacking" is used to refer to two different instances of the adding together of insurance coverage. The original or traditional use of the term "stacking" refers to the combining together of the coverages on a number of vehicles which are covered under one policy and in this sense, "stacking" has been permitted by case law in Florida for a number of years where not prevented by an applicable statute. In this use of the term "stacking," and only in this sense, the status of the claimant as a named insured has become significant as shown by the following case law development:
In Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229, 232 (Fla. 1971), the Florida Supreme Court held that the coverage of an uninsured motorist policy *1351 was determined by the uninsured motorist statute and any policy exclusions not in the statute were invalid. The court then held that under this statute there are two classes of insureds: Class I, being the named insured and relatives resident in his household,[3] who had full protection, and Class II, being others occupying the insured vehicle with the owner's permission, who had a qualified protection.
Tucker v. Government Employees Insurance Co., 288 So.2d 238 (Fla. 1973) extended Mullis and held that a Class I insured under uninsured motorist endorsements with stated per person per accident limits attached to a policy covering two vehicles, with separate premiums charged for each, could aggregate or "stack" the limits for each vehicle and recover the total and policy provisions to the contrary were invalid. Another example of this stacking principle operating in favor of a Class I insured is Florida Farm Bureau Casualty Co. v. Andrews, 369 So.2d 346 (Fla. 4th DCA 1978), cert. denied 381 So.2d 764, 766 (Fla. 1980).
However, other cases have drawn a distinction based on the status of the claimant as being or not being a named insured and have held that the owner's coverages on a number of vehicles under one policy could not be stacked for the benefit of a Class II insured. In Travelers Insurance Co. v. Pac, 337 So.2d 397 (Fla. 2nd DCA 1976), Pac was injured while operating a vehicle insured under a fleet policy issued to his employer. The policy contained uninsured motorist coverage of $10,000 on 14 separate vehicles. Pac attempted to stack these coverages to compensate for his injuries. The court refused to approve the stacking because Pac was a Class II insured under Mullis.
The Tucker opinion cites Mullis and we think the net effect of the language quoted above is that stacking is mandated only for those insureds in the first category outlined in Mullis. Stacking is derived from the presumption that when the named insured purchases uninsured motorist coverage on more than one automobile, he intends to buy extra protection for himself and his family, regardless of whether his injury occurs in any one of his insured vehicles or elsewhere. But there is no reason to apply this result to a guest or employee injured in an insured vehicle. That person has no relationship with any other insured vehicle and the coverage on the others should not inure to his benefit. Pac, supra at 398.
The reasoning of Pac has been followed in later cases. See Liberty Mutual Insurance Co. v. Searle, 379 So.2d 131 (Fla. 4th DCA 1979); Hartford Accident and Indemnity Co. v. Richendollar, 368 So.2d 603 (Fla. 2d DCA 1979).
Therefore, Johnson was properly included as a Class II insured under Reserve's coverage of Fudge's vehicle involved in the accident as she was operating it with Fudge's permission; however, Johnson is not covered under Fudge's additional coverage on Fudge's second vehicle because (1) Johnson was not a Class I insured because she was neither a named insured nor a relative of Fudge residing in Fudge's household and (2) Johnson was not a Class II insured as to Fudge's second vehicle because she did not occupy it at the time of the accident. Therefore, the trial court erred in directing that Fudge's multiple coverages be stacked to allow Johnson an aggregate coverage of $30,000 rather than the $15,000 coverage on the one vehicle of Fudge that was involved in this accident.
The next question is whether Johnson can recover on the uninsured motorist coverage in her own policy with General. While this question would not appear to be involved in this appeal because General and Johnson have, as between themselves, settled this issue, it is involved because, as appellant argues, if General was not obligated to Johnson then Reserve would be entitled to set off against Reserve's policy all proper set offs without proration with General.
*1352 This question involves the term "stacking" as it is sometimes used in a secondary sense referring to the adding together of coverage under different policies.[4]
Before passage of the anti stacking statute, Section 627.4132, Florida Statutes (1976), this second type of stacking was generally recognized and held to be proper. United States Fidelity and Guaranty Co. v. Curry, 371 So.2d 677 (Fla. 3d DCA 1979); Lezcano v. Leatherby Insurance Co., 372 So.2d 214 (Fla. 4th DCA 1979). Contra, Government Emp. Ins. Co. v. Taylor, 342 So.2d 547 (Fla. 1st DCA 1977).
Appellant claims that the anti-stacking statute applies and prohibits the stacking of coverage under the General policy upon the coverage under the Reserve policy and cites McLellan v. State Farm Mutual Automobile Insurance Company, 366 So.2d 811 (Fla. 4th DCA 1979). McLellan does hold that this statute was intended to, and does, "eliminate stacking entirely", even where the policies sought to be stacked were issued to different named insureds (such as to Johnson and Fudge in this case), notwithstanding that the last sentence of the statute provides:
This section shall not apply to reduce the coverage available by reason of insurance policies insuring different named insureds.
The contrary view was taken in Kokay v. South Carolina Insurance Company, 380 So.2d 489 (Fla. 3d DCA 1980). This court[5] and other courts[6] have concluded that the McLellan decision was reached through a strained judicial interpretation of legislative intent and therefore we have declined to follow McLellan, preferring instead to follow Kokay in holding that the last sentence of the statute prevents it from applying where, as here, the policies in question were issued to different insureds. Accordingly, we hold the trial court properly held that the anti-stacking statute did not bar Johnson from recovering from General on her personal uninsured motorist coverage and that Johnson can "stack" that coverage onto coverage under Fudge's policy with Reserve.
The third and last problem in this case relates to setoffs against uninsured motorist coverage. Since the decision of the trial court in this case, this court has interpreted Section 627.727(1), Florida Statutes (1979), to not allow a set-off for PIP and medical benefits against uninsured motorist coverage. State Farm Mutual Automobile Insurance Co. v. Bergman, 387 So.2d 494 (Fla. 5th DCA 1980). As stated therein, our decision in Bergman expressly and directly conflicts on the same point of law with the decision of the First District Court of Appeal in Carter v. Government Employees Insurance Co., 377 So.2d 242 (Fla. 1st DCA 1979), and with other cases cited in Bergman. Cf. Lackore v. Hartford, 390 So.2d 486 (Fla. 4th 1980) [1980 F.L.W. 2204] (for an alternative approach).
As a result of our decisions herein and the fact that this appeal affects only the parties thereto, Paragraph 1 of the partial final judgment herein is modified to provide, subject to trial on the reserved issue of damages, that plaintiff appellee Minnie Powell Johnson is entitled to recover from the defendant appellant Florida Insurance Guaranty Company upon the policy issued by Reserve Insurance Company to Carrie D. Fudge the gross amount of $15,000 with a set off[7] of $6,000, being 3/5ths[8] of Allstate's *1353 $10,000 of liability coverage, for a net recovery of $9,000.
The excellent briefs submitted by counsel were of special value to the court in this case.
As modified, the partial final summary judgment herein is
AFFIRMED.
FRANK D. UPCHURCH, Jr., and SHARP, JJ., concur.
NOTES
[1] Ch. 80-364, § 1, Laws of Fla. effective October 1, 1980, eliminates uninsured motorist coverage from Sec. 627.4132, Fla. Stat.
[2] See State Farm Mutual Auto. Ins. Co. v. Kuhn, 374 So.2d 1079 (Fla. 3d DCA 1979).
[3] Under the usual insurance policy the term "named insured" includes any person designated as such and while residents of the same household, the spouse of a named insured and relatives of either, but others occupying an insured vehicle are only an "insured."
[4] See, e.g., Sellers v. United States Fidelity and Guaranty Co., 185 So.2d 689 (Fla. 1966); Cox v. State Farm Mutual Automobile Insurance Co., 378 So.2d 330 (Fla. 2d DCA 1980).
[5] Day v. United States Fidelity and Guaranty Co., 388 So.2d 351 (Fla. 5th DCA 1980).
[6] Porter v. State Farm Automobile Insurance Co., 385 So.2d 1100 (Fla. 2d DCA 1980); Stephan v. U.S. Fidelity and Guaranty Co., 384 So.2d 691 (Fla. 2d DCA 1980); Burt v. State Farm Mutual Automobile Insurance Co., 383 So.2d 966 (Fla. 1st DCA 1980).
[7] The Florida Supreme Court in Dewberry v. Auto Owners Ins. Co., 363 So.2d 1077 (Fla. 1978), held that the uninsured motorist statute required that the tortfeasor's liability coverage be set off against uninsured motorist coverage.
[8] Reserve's coverage of $15,000 plus General's coverage of $10,000 totals $25,000 of which sum Reserve's $15,000 equals 3/5ths for the purpose of prorating Allstate's liability coverage.