398 So.2d 877 (1981)
Jacques LOBRY, Appellant/Cross-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee/Cross-Appellant.
No. 80-855.
District Court of Appeal of Florida, Fifth District.
April 29, 1981.
Rehearing Denied May 29, 1981.
*878 Edward A. Nagel, Winter Park, for appellant/cross-appellee.
Thomas G. Kane of Driscoll, Langston, Dayton & Kane, P.A., Orlando, for appellee/cross-appellant.
SHARP, Judge.
Lobry appeals a final summary judgment entered after arbitration of his uninsured motorist claim against State Farm Mutual Automobile Insurance Company. Under his policy with State Farm, Lobry had $100,000 uninsured motorist coverage. He raises two points: the court erred in allowing any set-offs against the arbitrators' award, and in particular, a $12,000 medical expense payment; and it erred in not awarding him a reasonable attorney's fee, either by outright award or reduction in the total set-offs for his attorney's efforts in obtaining the set-off payments from the workers' compensation carrier. State Farm cross appeals the lower court's denial of attorney's fees for its counsel pursuant to Chapter 57, Florida Statutes. We affirm the denial of fees to State Farm on the cross appeal, and the trial court's handling of attorney's fees for Lobry under the circumstances of this case, but we agree the $12,000 medical payment should not have been set-off against the arbitration award.
Lobry was injured by an automobile while he was working as an employee of the Sarasota Kennel Club in July of 1978. The motorist had a $10,000 liability policy, and *879 Lobry received $10,000 from the "under-insured" tortfeasor. He also received the following payments from his employer's workers' compensation carrier:

 $ 2,175.00 Future Medical Payments
 12,000.00 Past Medical Payments
 20,825.00 Lost Earning Capacity
 8,226.00 Lost Wages

Lobry's attorney obtained the compensation payments after pursuing the claims to a final hearing. He submitted an affidavit executed by another attorney that $17,290.40 (or 40% of the "recovery" from the compensation carrier) would be a reasonable fee for Lobry's attorney's services. Lobry's attorney also submitted affidavits showing he expended a total of 22 1/2 hours in this matter, including the arbitration proceedings, but excluding the compensation proceedings, and that he received $1,500 in fees from the compensation carrier, as part of a settlement agreement. The court awarded $1,000 for attorney's fees for Lobry, for his efforts in filing suit against State Farm and obtaining arbitration.[1]
The arbitration proceeding was required by the terms of the State Farm policy. It provided:
Two questions must be decided by agreement between us:
1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle, and
2. If so, in what amount? If there is no agreement, these questions shall be decided by arbitration upon written request of the insured or us.
The arbitrators produced a "Form of Finding" awarding Lobry the following sums:

 1. Loss of claimant's wages $12,000.00
 2. Loss of claimant's earning
 capacity 30,000.00
 3. Damages for loss of ability to
 enjoy a normal life, both past
 and future 8,000.00
 4. Damages for any pain and
 suffering, disability and mental
 anguish 12,000.00
 5. Future medical expenses 2,500.00
 __________
 TOTAL AWARD $64,500.00

This finding does not take into consideration any other matters such as medical bills, for which no evidence was presented, and no consideration has been given herein to whether or not State Farm Mutual Automobile Insurance Company is entitled to any set-offs of any kind.

SO SAY WE ALL!
The trial court accepted the arbitrator's award of $64,500 as Lobry's total damages. Against that sum, it allowed the following set-offs:

 A. Payment by the tortfeasor $10,000.00
 B. Future medical from workers'
 compensation claim 2,175.00
 C. Loss earning capacity from
 workers' compensation claim 20,825.00
 D. Lost wages from workers' compensation
 claim 8,226.00
 E. Medical payments from workers'
 compensation claim 12,000.00

With exception of item "E", which was not considered by the arbitrators, the payments allowed as set-offs were less than Lobry's actual damages as found by the arbitrators.
Lobry's argument that the arbitrators' award should have been confirmed by the trial court without consideration of set-offs due to the insurer is untenable. Under the State Farm policy only the issues of liability of the other motorist and the insured's damages could have been the subject of arbitration.[2] The "Form of Finding" clearly shows the arbitrators were solely concerned with items of damages; and they expressly did not consider any available set-offs to State Farm. Even if the arbitrators had determined "set-offs" to State Farm, the court should have redetermined them because issues pertaining to "coverage" are questions of law for the courts, and are beyond the scope of the arbitration agreement. Zeagler v. Commercial *880 Union Insurance Company of N.Y., 166 So.2d 616 (Fla.3d DCA 1964); Cruger v. Allstate Insurance Company, 162 So.2d 690 (Fla.3d DCA 1964).
The allowance of set-offs to the insurance company against its uninsured motorist coverage for payments received by the insured from other sources is a confusing area of Florida's No-Fault Insurance law and, among the District Courts of Appeal, there is no uniformity of opinion.[3] At the time of Lobry's injury, the applicable statute provided:
The coverage provided under this section shall be excess over, but shall not duplicate the benefits available to an insured under, any workmen's compensation law, personal injury protection benefits, disability benefits law, or any similar law; under any automobile liability or automobile medical expense coverages; or from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident. (Emphasis supplied).
§ 627.727(1), Fla. Stat. (Supp. 1978).
We have taken the position that only the underinsured motorist's automobile liability insurance should be set-off against the underinsured motorist coverage (consistent with the 1980 revision to Section 627.727) and not medical or personal injury protection payments unless the payments duplicate benefits available or received by the insured. State Farm Mutual Automobile Insurance Company v. Bergman, 387 So.2d 494 (Fla.5th DCA 1980); Florida Ins. Guaranty Assn. v. Johnson, 392 So.2d 1348 (Fla.5th DCA 1980).
Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077 (Fla. 1978), established that liability payments received from the underinsured tortfeasor's insurance company directly reduce or set-off the amount recoverable under the injured party's uninsured motorist coverage. Thus clearly the allowance of the set-off for the $10,000 tortfeasor payment to Lobry was proper.
We agree in this case, except for the $12,000 medical expense payment, that the other set-offs which pertain to workers' compensation payments received by Lobry, were properly "set-off" because if not allowed, Lobry would receive (in effect) "duplicate" benefits, contrary to Section 627.727.[4] However, if Lobry's uninsured motorist coverage had been less, so that he would not recover his damages in full because of the set-offs, consistent with the reasons stated in Bergman and Johnson, the set-offs would not have been proper because they would not have been "duplicated" by any payments received by the insured.[5]
The same reasoning results in the opposite conclusion regarding the $12,000 medical expense item. The arbitrators stated they did not consider any past medical bills. An item for present or incurred medical expense was missing from the award, although there was one for "future" medical expenses. Clearly the "damage" award omitted that item of damage. Therefore, since the $12,000 medical payment was (for whatever reason) excluded from the "pot", it should not have been taken out by the court. Lobry will not receive any duplication of payment for this item, since the arbitrators excluded it from their damage award.
In seeking to recoup from the set-offs allowed the costs and expenses of the compensation proceedings, Lobry relied on cases where insurance companies sought to participate in the insured's recovery against another person. The courts allowed the insured to deduct from the "duplicate" payments received, the costs and fees necessary to obtain the payment or fund from which the insurance company sought reimbursement,[6] *881 on general equitable principles.[7] The courts felt it was not fair or equitable to let the insurance company "ride on the coat-tails" of the insured's efforts without bearing the expense of litigation.
However, where the insured first sued the tortfeasor or prosecuted his workers' compensation claim before submitting the uninsured motorist claim to arbitration, the courts have not recognized this principle of "equitable distribution" in the context of set-offs, although logically the principle appears applicable. State Farm Mutual Automobile Insurance Company v. Napoli, 380 So.2d 1325 (Fla.4th DCA 1980); Hall v. Liberty Mutual Insurance Company, 376 So.2d 1183 (Fla.1st DCA 1979). The rationale stated by these cases is that Dewberry mandates that the tortfeasor payment be set-off "in gross"; the "philosophy" of the uninsured motorist statute prevents the allowance of set-offs for fees and expenses in suing the tortfeasor because if the tortfeasor had had liability coverage in the amount of the uninsured motorist coverage, the insured would not have been entitled to recover his attorney's fees in his suit against the tortfeasor.[8]
The rationale of these cases does not appear as directly applicable to the question of reducing the set-offs for the insurance company where the insured has pursued his workers' compensation claims.[9] However, we do not have to reach the question of allowance to the insured of attorney's fees in pursuing a workers' compensation claim by way of reducing the set-offs allowed the insurance company because in this case the record fails to show an adequate basis to make an award of fees in the compensation proceeding.[10] Lobry received a fee of $1,500 as part of a settlement with the carrier, and there is nothing of record to show his total hours spent on the compensation proceeding, nor a proper standard to determine an award of fees for his services.[11] The $17,290.40 fee sought by Lobry was based on 40% of the recovery from the compensation carrier. This approach in court computations of attorney fee awards for workers' compensation matters has been disapproved by the Florida Supreme Court.[12]
For the reasons stated in this opinion, the judgment is affirmed except for the allowance of the $12,000 medical expense set-off, which is reversed.
AFFIRMED in part; REVERSED in part.
FRANK D. UPCHURCH, Jr. and COWART, JJ., concur.
NOTES
[1] § 627.428, Fla. Stat. (1979).
[2] See 18A Fla.Jur. Insurance § 891 (1971).
[3] See Waters v. State Farm Mutual Automobile Ins. Co., 393 So.2d 1203 (Fla.2d DCA 1981).
[4] Stuyvesant Insurance Company v. Johnson, 307 So.2d 229 (Fla.4th DCA 1975).
[5] Contra, Waters v. State Farm Mutual Automobile Ins. Co., 393 So.2d 1203 (Fla.2d DCA 1981); Florida Farm Bureau Casualty Co. v. Andrews, 369 So.2d 346 (Fla.4th DCA 1978).
[6] See Manchester Insurance & Indemnity Company v. Rodriquez, 331 So.2d 372 (Fla.3d DCA 1976); State Farm Mutual Automobile Ins. Co. v. Tote, 325 So.2d 57 (Fla.3d DCA 1976); State Farm Mutual Automobile Ins. Co. v. Gordon, 319 So.2d 36 (Fla.1st DCA 1975); Central National Insurance Group v. Hotte, 312 So.2d 235 (Fla.1st DCA 1975); Hartford Accident & Indemnity Company v. Orlow, 300 So.2d 36 (Fla.3d DCA 1974).
[7] Central National Insurance Group v. Hotte, 312 So.2d 235 (Fla.1st DCA 1975).
[8] Travelers Indemnity Company v. Causey, 381 So.2d 1200 (Fla.2d DCA 1980).
[9] See § 627.7372(3), Fla. Stat. (1979).
[10] See § 440.34, Fla. Stat. (1979).
[11] Lobry did not contend in this appeal that the deputy commissioner improperly applied the "sliding scale" set of guidelines for computing fees found in § 440.34(1), Fla. Stat. (1979).
[12] Lee Engineering & Const. Co. v. Fellows, 209 So.2d 454, 458 (Fla. 1968) ("[t]he nature of the Workmen's Compensation Law is such that the contingent percentage basis is not appropriate"). The validity of this view remains because the legislature also requires consideration of the Lee Engineering factors in addition to the modest contingent formula set out in § 440.34(1)(a)-(h), Fla. Stat. (1979).