532 So.2d 1329 (1988)
CENTENNIAL INSURANCE COMPANY, Appellant,
v.
James FULTON and Sara Fulton, Appellees.
No. 88-41.
District Court of Appeal of Florida, Third District.
November 1, 1988.
*1330 Rhea P. Grossman, Miami, Lanza, O'Connor, Armstrong, Sinclair & Tunstall, Coral Gables, for appellant.
Dixon, Dixon, Nicklaus, Valle & McIntosh and Larry Valle, Miami, for appellees.
Before SCHWARTZ, C.J., FERGUSON, J., and JOHN W. DELL, Associate Judge.
SCHWARTZ, Chief Judge.
Centennial Insurance Company, the appellee Fulton's uninsured motorist carrier, appeals from a final judgment enforcing a UM arbitration award in Fulton's favor, without setting off any amount for allegedly duplicating workers' compensation payments under section 627.727(1), Florida Statutes (1977). That statute provides:
[T]he [UM] coverage provided under this section shall be excess over, but shall not duplicate the benefits available to an insured under, any workmen's compensation law, personal injury protection benefits, disability benefits law, or any similar law; under any automobile liability or automobile medical expense coverages; or from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident. [e.s.]
We find error, vacate the judgment and remand for further proceedings.
While in the course of his employment, Mr. Fulton was terribly injured in an automobile accident with an uninsured motorist. He received extensive workers' compensation benefits which his UM carrier's counsel said, without contradiction, amounted to $67,237.10 in medical expenses and lost wages. After the arbitration hearing of his UM case, which, so far as the record reveals, proceeded in a manner common to all such hearings (and jury trials), the arbitrators found that Mr. Fulton had "suffered total damages of $1,125,500" which were reduced by 75% comparative negligence to an award of $281,375.00.[1] Centennial paid the award less the $67,237.10 in alleged workers' compensation benefits, which it withheld. In the order now under review, the trial court granted appellees' motion to enforce the full amount of the arbitration award and accordingly entered a final judgment for $67,237.10. The bases of the ruling were apparently the conclusions that Centennial had not properly shown either (a) that the arbitrators had actually included the compensation benefits in the award so as to entitle the carrier to a set-off because it would thus have duplicated the comp benefits, Hartford Accident & Indem. Co. v. Lackore, 408 So.2d 1040 (Fla. 1982); Bergmann v. Sentry Ins., 422 So.2d 972 (Fla. 4th DCA 1982); Lobry v. State Farm Mut. Auto. Ins. Co., 398 So.2d 877 (Fla. 5th DCA 1981), or (b) the amount of the comp benefits actually paid. We do *1331 not agree with this conclusion of the trial court.

I
Insofar as the duplication issue is concerned, there is every indication  and no reason to believe otherwise  that the arbitrators necessarily included the most basic elements of damages, that is, lost wages and medical expenses, in their assessment of Fulton's "total" damages of over a million dollars. Any question that this was true is thoroughly dissipated by the fact that the award did specifically exclude claimed "economic losses to [the claimants'] corporate enterprises," thus showing by negative implication that the comp payments were not excluded.[2] In fact, not even the appellees affirmatively suggest with a straight face that the amount of Fulton's award does not include the items covered by the compensation payments. Under these circumstances, we must hold that the insurer established at least prima facie that a duplication indeed occurred.
Putting it another way, if, as Fulton claims, the UM carrier has the "burden of proof" to demonstrate that the award encompassed a collateral source, the common sense of the situation itself shows that that burden has been met. In this respect, this case is decisively different from each of those cited by the appellees. In Lobry v. State Farm Mutual Automobile Insurance Co., 398 So.2d at 879, an itemized award specifically stated that certain medical expenses had not been included. Likewise, in Bergmann v. Sentry Insurance, 422 So.2d at 972, the comp and p.i.p benefits actually exceeded the total award which presumably also included intangible losses. In the light of the carrier's contention that none of the out-of-pocket expenses were related to the accident, it was obviously impossible in Bergmann to conclude that the arbitrators had awarded anything for those items. See also Hartford Accident & Indem. Co. v. Lackore, 408 So.2d at 1041 (collateral payments specifically not claimed in arbitration). That is simply not this case.

II
We reach the same conclusion as to the claim that there was no proper showing of the amount of compensation benefits paid. In fact, the $67,237.10 figure was advanced both in the documents submitted and at the hearing to confirm the arbitration award by counsel for the UM carrier.[3] Although he argued that the amount had not been affirmatively established by formal proof, the sum was not disputed by the attorney for Fulton, who after all was the one who received these amounts. In this posture, we are not so willing as the court in Leon Shaffer Golnick Advertising, Inc., v. Cedar, 423 So.2d 1015 (Fla. 4th DCA 1982), to hold that representations of counsel as an officer of the court mean nothing. Obviously, a lawyer's unsworn statement cannot overcome actual testimony to the contrary. In this case, however, there was neither such evidence nor even any argument which challenged the accuracy of the attorney's representation. In the absence of a contrary showing, we believe that the amount of the compensation payments was sufficiently established to permit the submission of the question to the trier of fact. At the very least, Centennial should not be sandbagged by a holding, either below or on appeal, that it is foreclosed from demonstrating the amount of the comp payments when it was not placed on fair prior notice of a claim that its stated figure was incorrect or that it was required to introduce sworn testimony to that effect. At the new hearing which is ordered by this opinion, both sides will have the opportunity of presenting testimony on this issue. See State v. Dodd, 396 So.2d 1205 (Fla. 3d DCA 1981), approved, 419 So.2d 333 (1982); Pinder v. State, 396 So.2d 272 (Fla. 3d DCA 1981).

*1332 III
In thus rejecting the appellees' contentions that Centennial's substantial statutory rights  to which even insurance companies are sometimes entitled  have been forfeited because of an alleged "failure of proof" as to issues which were not in real dispute, we rely upon the leading case of Meade v. Lumbermens Mutual Casualty Co., 423 So.2d 908 (Fla. 1982), which emphasizes that parties' UM rights may not be permitted to turn on the supertechnical quirks of arbitration law and practice. We thoroughly agree with this conclusion.
On the other hand, we recognize that our holding that Centennial made a prima facie case of its entitlement to a set-off comes for the first time on appeal, with the result that, because the lower court ruled in his favor as a matter of law, Fulton has not yet had the opportunity to present evidence as to his side of the issues of whether the award excluded the comp payments and the amount of such benefits paid. State v. Dodd, 396 So.2d at 1205. Accordingly, we do not reverse outright but remand for a new hearing at which both parties shall be permitted to introduce any pertinent evidence on these questions. See Dodd, 396 So.2d at 1208.

IV
As to the merits of the proper calculation of the amount, if any, to be set off against the award if the trial court so rules after this hearing, we reemphasize that § 627.727(1) allows a deduction only of the amounts for which the claimant has already received compensation. See Hartford Accident & Indemn. Co. v. Lackore, 408 So.2d at 1042; Bergmann v. Sentry Ins., 422 So.2d at 973; Lobry v. State Farm Mut. Auto. Ins. Co., 398 So.2d at 880. In the present instance, we believe  since Fulton did not receive 75% of those benefits from the UM carrier by virtue of his comparative negligence, and the award did not, to that extent, "duplicate" the compensation benefits  that the reduction should be 25% of any duplicate workers' comp payments. Hartford Accident & Indem. Inc. Co. v. Lackore, 408 So.2d at 1040; Bergmann v. Sentry Ins., 422 So.2d at 972; Lobry v. State Farm Mut. Auto. Ins. Co., 398 So.2d at 877.
For these reasons, the judgment below is vacated and the cause remanded for further proceedings to be conducted in accordance with this opinion.
VACATED, REMANDED WITH DIRECTIONS.
FERGUSON, J., concurs.
DELL, JOHN W., Associate Judge, dissenting:
I cannot agree that Centennial should be granted another hearing to establish its entitlement to a setoff. I find no support in the record for the majority's conclusion that Fulton did not dispute the accuracy of Centennial's representation that Fulton received workers' compensation benefits in the amount of $67,237.10. This appeal arises out of a hearing which had as its purpose the determination of Centennial's entitlement to a setoff and the amount thereof, if any. During that hearing, the following exchange occurred:
THE COURT: On the theory of set off?
[CENTENNIAL'S COUNSEL]: Yes, ma'am. What's in dispute is the amount of money that was previously paid to Dr. Fulton for Worker's Compensation benefits... . In this case it's not disputed that he received Worker's Compensation benefits and neither is it in dispute that his attorney during the hearing presented evidence of his medical bills.
THE COURT: During what hearing?
[CENTENNIAL'S COUNSEL]: The arbitration hearing.
[FULTON'S COUNSEL]: The amount of benefits certainly is in dispute. I have never seen a payout. I don't know which amounts are established as to the amount paid by the comp. carrier.
[CENTENNIAL'S COUNSEL]: I am not talking about that. What I am saying is there's no dispute during the arbitration hearing Dr. Fulton's attorney presented medical bills and lost wages without introducing any evidence that these had *1333 already been previously paid through Worker's Compensation.
[FULTON'S COUNSEL]: It is not conceded, Judge, I'm sorry, some of the bills 
I also find nothing in this record to indicate that counsel for Fulton or the court below sandbagged Centennial or that an affirmance by this court would result in Centennial being sandbagged on appeal. This was Centennial's second opportunity to present evidence supporting its claim that Fulton received duplicative workers' compensation benefits in the amount of $67,237.10.
THE COURT: Have you made any motions for the taking of any depositions? I mean anything else in the record? I mean this is your second time here. I gave it a second hearing to give everybody an opportunity to get their documents in order and I need something on the record.
[CENTENNIAL'S COUNSEL]: I am relying on the memorandum of law that I filed prior to the first hearing of this Court, not any memorandums that the plaintiff may have filed. He is shifting the burden to me. There's nothing in the record that talks about amounts. That's what he's trying to do.
[FULTON'S COUNSEL]: We went through this argument the last time.
[CENTENNIAL'S COUNSEL]: The burden in this case is not applicable.
THE COURT: I am sorry, no, I don't think so. I think you're the one that wants a set off. You have to show me why you are entitled to a set off. More importantly, where the double recovery is and in what amount, and the record is silent. I have given you an opportunity to perfect the record if you could do so.
Centennial offered no evidence and relied solely upon its bare assertion in a memorandum of law to establish its entitlement to a $67,237.10 setoff. In my opinion, Centennial did not make a prima facie case of entitlement to the setoff. Centennial had two opportunities to present evidence in support of its claim but failed to do so. Based on this record the trial court did not abuse its discretion or err as a matter of law when it denied Centennial's claim for a setoff.
NOTES
[1] Mrs. Fulton also received an award for her consortium claim which was paid in full and is not now before us.
[2] There was no evidence that the comp payments were specifically excluded from the arbitrators' consideration  as occurred in Lackore and Lobry and as was suggested in Bergmann.
[3] $67,237.10 seems hardly a figure one would pick out of the air.