ALTENBERND, Judge.
USAA Casualty Insurance Company (USAA) appeals a final judgment awarding uninsured motorist benefits to its insureds, Steven and Pauline McDermott. The unusual facts of this case presented the trial *1116 court with a challenging case to try by jury without undue prejudice to one side or the other. After a full review of the record, we conclude that the judgment should be affirmed. Although USAA presents a strong argument that it should be entitled, to a setoff for future medical and wage benefits that are very likely to be available for Mr., McDermott under workers’ compensation coverage, there is no express statutory entitlement to such a setoff and USAA has not attempted to establish such a right within its own insurance contract. We conclude that the general public policies announced in section 627.727, Florida Statutes (2002), do not authorize this court to give USAA a remedy that does not exist either in its contract or the statute regulating its contract. If a new law is required to permit such a set-off, it should be established by the legislature.
Mr. McDermott is a deputy sheriff. On November 2, 2002, he was on duty in a patrol car. He received a report concerning a home invasion and auto theft. He became involved in an automobile chase of the suspect, Christopher Cheatham. The chase lasted more than fifteen minutes and was videotaped by a sheriffs department helicopter. Ultimately, the chase ended when Mr. Cheatham’s car collided with Mr. McDermott’s patrol car. Mr. McDer-mott, who had been in prior accidents and had sustained prior back injuries, suffered injuries including injuries to his back.
Because Mr. McDermott was on duty, he was entitled to workers’ compensation coverage for this incident. He and his wife were also entitled to sue Mr. Cheat-ham, who was then a prisoner without insurance coverage, and to pursue an uninsured motorist claim against Mr. McDer-mott’s personal automobile insurer, USAA.
The claim against Mr. Cheatham was essentially a matter of undisputed liability. Moreover, Mr. Cheatham was a violent criminal involved in a police chase. When stopped, it was determined that Mr. Cheatham had a crack pipe and wanted to use his small remaining amount of cocaine before going to jail. The McDermotts did not sue Mr. Cheatham for punitive damages, but the case presented facts that might encourage a jury to award liberal damages against him and in favor of the McDermotts.
The McDermotts’ lawsuit named both Mr. Cheatham and USAA and included claims for both Mr. McDermott and his wife. By virtue of the McDermotts’ writ of habeas corpus ad testificandum, Mr. Cheatham appeared at trial in an orange prison jumpsuit. Although Mr. Cheatham initially contested the claim, he admitted liability during voir dire and did not further participate in the trial.
Prior to trial, USAA amended its answer to admit that Mr. Cheatham was negligent and to withdraw a defense of comparative negligence. It did, however, argue that Mr. McDermott’s injuries were not as severe as he claimed and that his medical conditions were actually the result of his prior accidents.
At the conclusion of the trial, the jury returned a total award of $681,303 for Mr. McDermott. Over $530,000 of this award was for future medical expenses and future lost wages. The jury awarded only $40,000 in future pain and suffering. The jury also awarded Mrs. McDermott $41,454. Following a reduction for setoffs, including workers’ compensation already recovered by Mr. McDermott, the trial court entered a total judgment of $644,100 jointly and severally against Mr. Cheat-ham and USAA in favor of the McDer-motts. The majority of this award involves future payments that are likely to be covered by workers’ compensation. USAA appealed the judgment.
*1117 USAA raises three issues on appeal, two of which warrant discussion. First, USAA argues that the trial court should have bifurcated its trial from that of Mr. Cheatham and that it should have limited the testimony and evidence describing Mr. Cheatham’s criminal conduct. Prior to trial, the issues for jury determination between the McDermotts and Mr. Cheatham were identical to those between the McDermotts and USAA. It is difficult to see how the trial court abused its discretion in denying a bifurcation that would have required trying the same case twice merely because USAA did not want to share the defense of this case with a criminal. As a practical matter, Mr. Cheat-ham’s participation in this trial was very limited because of his decisions during voir dire. Thus, we conclude that the trial court did not err in denying a bifurcated trial.
The evidence of Mr. Cheatham’s criminal conduct is a more complicated issue. It seems unavoidable that the jury would need to understand that this case involved a police chase of a suspected criminal. Because USAA was contesting the issue of causation, some of the activity of Mr. McDermott on the videotape was relevant to his physical condition. It is doubtful that the jury needed to know about Mr. Cheatham’s crack pipe or his desire to use his final supply of cocaine prior to going to jail. On the other hand, liability was an admitted issue at this trial. The lawyers for both sides focused on the issue of damages. A review of the closing arguments does not suggest that the McDermotts sought or received punitive damages disguised as compensatory damages. Thus, to the extent that any irrelevant evidence was admitted over objection during this trial, we are unconvinced that it resulted in harmful error. See Nat’l Union Fire Ins. Co. of Pittsburgh v. Blackmon, 754 So.2d 840, 843 (Fla. 1st DCA 2000) (citing Katos v. Cushing, 601 So.2d 612, 613 (Fla. 3d DCA 1992)) (stating the test for harmful error in a civil case is whether, “but for such error,” a different result may have been reached); see also § 59.041, Fla. Stat. (2002).
USAA’s second issue is probably a matter for which there could be a better rule of law. It has long been established that uninsured motorist coverage “shall be over and above, but shall not duplicate, the benefits available to an insured under any workers’ compensation law, personal injury protection benefits, disability benefits law, or similar law.” § 627.727(1). For those payments that a plaintiff has already received as workers’ compensation benefits, it is relatively easy to devise an adequate method to prevent a jury’s award from resulting in a judgment that duplicates payments made by the workers’ compensation insurer.
Providing an adequate method of setoff for future benefits, however, is a far more difficult task.[1] In the related area of personal injury protection benefits, the supreme court has held that the setoff provided in section 627.736(3), Florida Statutes (1991),[2] does not require a reduction from a verdict in an automobile negligence action for future PIP benefits that are payable to reimburse future lost income or future medical expenses. See *1118 Rollins v. Pizzarelli, 761 So.2d 294 (Fla.2000). The court reached a similar result under section 768.76(1), Florida Statutes (1993), for future payments under voluntary medical payments coverage. Allstate Ins. Co. v. Rudnick, 761 So.2d 289 (Fla.2000). In Rudnick, the court expressly declined to reach the issue of whether there should be any setoff from amounts awarded for an uninsured motorist claim under the statute involved in this case, § 627.727(1), for future payments of PIP or medical payments coverage. Rudnick, 761 So.2d at 293 n. 5. It is noteworthy that section 627.736(3) addresses future benefits that are “payable,” whereas section 627.727(1) addresses future benefits that are “available.” Moreover, both sections 627.736(3) and 768.76(1) are statutes altering rights of parties in a typical negligence action. They are not statutes addressing a first-party contractual claim by an insured against his or her own insurance carrier. Thus, the decisions in Rollins and Rudnick are merely persuasive.
The amounts in controversy concerning future PIP and medical payments coverage in a typical personal injury lawsuit are often relatively small, and thus the need to establish a complex solution for those benefits is questionable. On the other hand, as this case demonstrates, the duplication between workers’ compensation and uninsured motorist coverage for future medical expense and wage loss can be very substantial. Moreover, most people would expect that the injuries sustained by a law enforcement officer during the chase of a suspect would be covered primarily by workers’ compensation and not covered by uninsured motorist coverage purchased as part of the personal insurance policy on the officer’s family car. Thus, a clear rule establishing the relative responsibility of the workers’ compensation carrier and the uninsured motorist carrier for future medical and wage loss claims might well be desirable.
USAA has not cited to any Florida case resolving the issue of offsets for future workers’ compensation benefits and has not identified any other state that has established a special rule for offsetting future benefits. Oúr own independent research on the topic has not yielded any cases from other states that demonstrate any statutory or contractual solution warranting discussion in this opinion. Although the issue has existed in the structure of the uninsured motorist and workers’ compensation statutes for a generation, there has been no rush to resolve the matter.
Two Florida cases warrant at least some discussion. In Lobry v. State Farm Mutual Automobile Insurance Co., 398 So.2d 877 (Fla. 5th DCA 1981), the Fifth District reviewed a case in which the uninsured motorist carrier, State Farm, received an offset for future medical payments covered by workers’ compensation. A careful review of that case, however, establishes that the future medical expenses had already been settled by the workers’ compensation carrier by a lump sum payment under a statutory benefits structure significantly different than the statutes in existence today. Thus, the setoff in Lobry was comparable to the setoffs required under Rollins and Rudnick.
In Blackmon, 754 So.2d 840, the First District required an offset from an uninsured motorist claim for the present value of death benefits that would be paid in the future by the workers’ compensation carrier. Those benefits were to be paid under section 440.16(l)(b), Florida Statutes (1995), apparently to the widow. The amount of those future benefits had already been calculated, and the widow had a present enforceable right to this liquidated claim. Without regard to whether *1119 this court would adopt the approach in Blackmon, it is distinguishable because the future benefits payable under workers’ compensation in this case have not been resolved in any manner that gives the McDermotts a present claim to liquidated future damages.
It should be observed that while USAA argues that it is legally entitled to this setoff, it had made no effort to include such a setoff within the language of its insurance contract. Uninsured motorist coverage is a heavily regulated area of insurance law, and some contractual provisions have been disallowed by the courts as contrary to public policy. See Young v. Progressive Se. Ins. Co., 753 So.2d 80 (Fla.2000); Varro v. Federated Mut. Ins. Co., 854 So.2d 726 (Fla. 2d DCA 2003); Lee v. State Farm Mut. Auto. Ins. Co., 339 So.2d 670 (Fla. 2d DCA 1976). If USAA is correct that this setoff is compatible with the statutory law and would not improperly deny coverage to its insureds, it should be able to include this provision within its standard Florida contract. Without such a provision, USAA is effectively asking this court to add language to its contract and enforce this new language against its insureds. We see no basis to do this.
As a practical matter, it would appear that the current status of the law resolves the matter by preventing either insurance company from denying benefits for future damages. The injured plaintiff is not placed at risk of receiving nothing from the uninsured motorist insurance company today because of a setoff for future workers’ compensation benefits payable by an insurance company that may no longer exist when the future benefits are payable. The uninsured motorist carrier normally receives full subrogation rights against the tortfeasor from its insured, and the workers’ compensation carrier receives its lien against payments made by the tortfeasor. See §§ 440.39(3)(a), 627.727(6), Fla. Stat. (2002). The injured plaintiff does not need to worry that medical treatment which the jury today determined to be related to the accident will be disputed years from now by the workers’ compensation carrier when the treatment is actually needed or incurred. This collection of rules may not be perfect, but it minimizes the risk to the injured party and places risks on companies whose business is underwriting risks in exchange for premiums. We certainly have no authority to create a different rule today for use in this case.
Affirmed.
DAVIS and CANADY, JJ., Concur.

. It should be emphasized that this case does not involve an existing settlement by the workers’ compensation carrier under which Mr. McDermott has received or is entitled to receive benefits for these future claims.

. This section provides that ''[a]n injured party who is entitled to bring suit under the provisions of ss. 627.730-627.7405, or his legal representative, shall have no right to recover any damages for which, personal injury protection benefits are paid or payable.”