COBB, Judge.
This appeal involves a dispute between two insurance carriers as to the extent of their respective coverages of their insureds, herein referred to collectively as Crane,[1] pursuant to policies relating to the errors and omissions of the latter acting as an insurance broker. Utica Mutual Insurance Company (Utica) issued the primary policy which covered $500,000.00 per claim and was limited to $1,500,000.00 aggregate, subject to a $5,000.00 deductible per claim. The insurance policy did not define the word “claim.” Pennsylvania National Mutual Casualty Insurance Company (Penn National) issued an umbrella policy with a limit of $1,000,000.00 in excess of Utica’s limits.
Travelers Indemnity Company was a surety company that issued its surety bonds through independent agents such as Crane. Crane, as agent, obtained payment and performance surety bonds from Travelers for a client known as CM Systems, Inc. (CMS), a commercial general contractor. Crane was required to provide underwriting information to Travelers about CMS, such as the financial status of the company. In 1985 Crane learned that Michael Scarfia and Max Mitchell, the president and accountant of CMS, had purchased a mining company called Ter-ramar. Upon Searfia’s request, Crane withheld this information from Travelers. Crane also learned that CMS had leased mining-equipment that it subleased to Terramar. When a Travelers representative asked Scar-fia about certain UCC filings on equipment, Scarfia falsely represented that the equipment was new pickup trucks when it actually consisted of mining equipment.
During 1985 and 1986, Travelers wrote at least 64 bonds covering 52 CMS projects. Fourteen of these bonds, seven payment bonds and seven performance bonds, were written for seven projects wherein CMS, following the bankruptcy of Terramar and itself, defaulted. This caused Travelers to honor its surety obligation on those seven projects. Travelers maintained a separate claim file number for each defaulted project.
When Travelers learned that Crane had knowingly withheld information regarding the questionable investments of CMS and its president and accountant, it filed suit against Crane for the loss on each of the seven projects, an aggregate figure exceeding $4,700,000.00. Utica and Penn National, although in dispute between themselves as to their respective liabilities as the insurers of Crane, were able to settle the action by Travelers for $1,250,000.00. They agreed to each pay one-half. Penn National contributed $625,000.00, Utica contributed $495,000.00 on its own behalf and $125,000.00 pursuant to a loan agreement with Crane, and Crane contributed $5,000.00 (one deductible under its policy with Utica). In the loan agreement, Crane assigned Utica any right of action that Crane had against Penn National under the umbrella policy.
It is important to note that at the time of the settlement with Travelers, which was clearly in the best interest of the insured, both Utica and Penn National agreed to reserve their dispute as to the number of claims involved, which determined their respective coverage liabilities, for subsequent judicial resolution. It should also be noted that there was no evidence adduced at any time that the settlement value in respect to any particular project was greater than *43 $500,000.00, the “per claim” limit in the Utica policy.
Penn National then filed suit against Utica and Utica counterclaimed, each alleging various theories of breach of contract and subro-gation. In fact, they were simply seeking a declaratory judgment of their respective obligations under the insurance policies with Crane, as they had agreed to do at the time of their settlement with Travelers. The ultimate issue to be decided by the trial court was whether Travelers settled one claim, or more than one claim, against Crane, as the term “claim” was used in the Utica policy.
The trial court denied motions for summary judgment and submitted the issue to a jury, which found that Travelers settled more than one claim against Crane and returned a verdict in favor of Penn National against Utica for $625,000.00, the amount that Penn National contributed to the settlement. The trial court then awarded Penn National attorney's fees pursuant to section 627.428(1), Florida Statutes (1993), which provides:
Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured’s or beneficiary’s attorney prosecuting the suit in which the recovery is had.
Utica has appealed from the judgment entered below, contending the trial court erred in various respects: in denying its motions for summary judgment, directed verdict, and new trial; in admitting testimony of one Andrew Beverly; in utilizing a confusing verdict form; in granting Penn National’s motion for attorney’s fees; and in granting post-judgment interest on an award that included prejudgment interest.
In regard to the principal issue on appeal — the number of claims covered by the Utica policy — we concur with the result reached by the trial court, although it appears the issue was one of law to be determined by the court rather than one of fact for the jury. The ambiguous word “claim” was not defined by the Utica policy, and therefore must be construed against the drafter, Utica, and in favor of greater coverage. See Prudential Property and Casualty Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993); State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla.1986). Utica’s construction of its policy would afford Crane only $500,000.00 primary coverage less a $5,000.00 deductible, plus the $1,000,000.00 excess coverage by Penn National. The trial court’s conclusion that there were multiple claims (presumably seven) afforded $1,500,-000.00 primary coverage (less any applicable deductible up to $35,000.00) plus the $1,000,-000.00 excess coverage. Clearly, the trial court’s interpretation afforded the greater coverage. There was a sufficient evidentiary basis to support the trial court’s conclusions since there were seven separate projects involved in the action by Travelers and separate bonds issued for those projects, and the defaults occurred at separate points in time.
We find no error in the trial court’s discretionary decision to admit the expert testimony of Andrew Beverly despite late notice by Penn National. See Binger v. King Pest Control, 401 So.2d 1310, 1313 (Fla.1981). Utica was afforded the opportunity to depose Beverly the night before trial and declined to do so. Nor can we find any merit in Utica’s contention that the verdict form confused the jury since we do not believe the jury should have decided the central issue in the first place.
We find that the trial court erred in awarding an attorney’s fee to Penn National. Under the terms of section 627.428(1), the latter does not qualify as “any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer.” Since the true nature of this action was, or should have been, one for declaratory relief solely between two insurers rather than a subrogation action, there was no basis for the attorney’s fee award.
*44 The last issue raised on appeal is whether or not post-judgment interest accrues in regard to that portion of the final judgment that represents prejudgment interest. In our opinion in Peavy v. Dyer, 605 So.2d 1330 (Fla. 5th DCA 1992), we held that it does. Therein, we said:
In Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 214-215 (Fla.1985), our supreme court determined that prejudgment interest is simply an element of pecuniary damages. Under this loss theory of damage, the failure of the defendant to surrender monies it owed to the plaintiff was itself a wrongful deprivation of the plaintiffs property, which the final judgment restores to the plaintiff. Once this element of damages is awarded in the final judgment, prejudgment interest, like all other elements of damage, becomes part of a single total sum adjudged to be due and owing. See Phillips v. Parrish, 585 So.2d 1038 (Fla. 1st DCA 1991). The amount awarded for prejudgment interest, like all other components of the “judgment”, automatically bears interest as provided by section 55.03, Florida Statutes.
Our conclusion in Peavy is at odds with our sister courts[2] and with Florida Rule of Civil Procedure Form 1.988 (Judgment After Default) amended by the Florida Supreme Court in 1992. See In re Amendments to the Florida Rules of Civil Procedure, 604 So.2d 1110, 1210 (Fla.1992). We adhere to our position as stated in Peavy, but, in view of the conflict between appellate courts and between the Florida Supreme Court’s language in Argonaut and its amendment of Form 1.988 in 1992, we certify to the Florida Supreme Court the question of whether or not post-judgment interest accrues in regard to that portion of a final judgment that represents prejudgment interest.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
DAUKSCH, J., concurs.
GRIFFIN, J., concurs in part and dissents in part, with opinion.

. The insureds were: Osceola Management and Financial Services, Inc.; Newman-Crane and Associates Ins., Inc.; and Huston Crane, individually.

. .See, e.g., S & E Contractors, Inc. v. City of Tampa, 629 So.2d 883 (Fla. 2d DCA 1993); Central Constructors, Inc. v. Spectrum Contracting Co., 621 So.2d 526, 527 (Fla. 4th DCA 1993); Perez Sandoval v. Banco de Commercio, S.A., C.A., 582 So.2d 179 (Fla. 3d DCA 1991); LaFaye v. Presser, 554 So.2d 610 (Fla. 1st DCA 1989).