United States Court of Appeals,

Eleventh Circuit.

No. 94-4809.

BECKER HOLDING CORPORATION,
Plaintiff/Counter-defendant-Appellant/Cross-Appellee,

v.

R. William BECKER, Becker Trading Company,
Defendants/Counter-claimants-Appellee/Cross-Appellant.

March 27, 1996.

Appeals from the United States District Court for the Southern
District of Florida. (No. 92-14057-CIV-JCP), James C. Paine, Judge.

Before HATCHETT and BARKETT, Circuit Judges, and OAKES[*], Senior
Circuit Judge.

BARKETT, Circuit Judge:

Becker Holding Corp. ("Becker Holding") appeals a final
judgment entered in favor of William Becker and Becker Trading Co.
("William Becker") on Becker Holding's claims of breach of contract
and breach of fiduciary duty. Becker Holding also appeals the
judgment awarding William Becker $24,515,485.59 on his counterclaim
for accelerated payment on a promissory note. William Becker
cross-appeals the trial court's denial of prejudgment interest on
the interest component of a delinquent installment payment on the
note.

William Becker owned half the common stock of Becker Holding,
a privately-held corporation founded and chaired by Richard Becker,
William Becker's father, and engaged in various aspects of the
citrus industry. After a disagreement, William Becker was fired

---

[*]Honorable James L. Oakes, Senior U.S. Circuit Judge for the
Second Circuit, sitting by designation.

from his position as vice-president and chief executive officer of Becker Holding. The parties then negotiated the purchase of William Becker's shares in Becker Holding for $30 million, which included approximately $23,953,934.00 in principal and $6,046,066.00 in interest at a 10 percent interest rate. The agreement provided that Becker Holding would pay William Becker $5 million on April 1, 1991, and execute a promissory note for the outstanding principal and interest to be paid back in five equal annual installments of $5 million each beginning on April 1, 1992. The promissory note further provided (1) that if William Becker breached the non-competition clause to which the parties also had agreed, Becker Holding could suspend payments on the note and (2) that if Becker Holding was in default of payment for more than thirty days, William Becker could accelerate payment on the note, making the entire principal due. The non-compete clause of the agreement provided:

> 6. *COMPETITION:* The Seller, R. William Becker, will be free to engage in any and all aspects of the citrus industry, including the growing, picking, and packing of citrus fruit, except that, for a period of three (3) years from closing, *Seller shall not directly or indirectly engage in the processing or sale of citrus concentrate or fresh juices;....*

(emphasis added).

Shortly after signing the agreement, William Becker, through his new company Becker Trading, sought to purchase a cold-storage facility for citrus. After determining that Becker Holding did not object to the purchase, William Becker purchased the facility and began to offer storage services to citrus growers and packers. In the course of storing citrus concentrate, the bulk concentrate was mixed and blended, an ordinary service provided by citrus storage

operators.

Becker Holding took the position that this mixing and blending was tantamount to "processing" citrus concentrate in violation of the non-competition agreement. Becker Holding refused to pay the $5 million installment that was due on April 1, 1992, and sued William Becker for breach of contract. The complaint also alleged that William Becker breached his fiduciary duty to Becker Holding by making personal side deals to buy and sell fruit at a time when he was an officer of Becker Holding. Based on Becker Holding's failure to pay on the note, William Becker counterclaimed for accelerated payment of the promissory note.

Following a bench trial, the district court determined that based on the language of the non-competition agreement, the intent and understanding of the parties, and industry practice and custom, the blending and mixing done at William Becker's cold-storage facility was not "processing" as prohibited by the agreement. Alternatively, the court determined that even if William Becker did process concentrate, Becker Holding waived application of the non-competition agreement when it failed to object to William Becker's proposal to operate a citrus storage facility because blending is ordinarily done at such a facility. The court also found that William Becker did not buy, sell, or otherwise process citrus concentrate or juices. Regarding the breach of fiduciary duty claim, the court found that Richard Becker always had allowed his children to make their own citrus deals on the side, and because of this consent, William Becker's participation in the disputed side deals did not breach his fiduciary duties. Finally,

the court found that Becker Holding had defaulted on the April 1, 1992 installment payment, making the full amount of the promissory note due and payable.  The court entered final judgment against Becker Holding in the amount of $24,515,485.59, which included prejudgment interest only on the outstanding principal and not on the interest portion of the $5 million installment that was due and owing on April 1, 1992.

For the reasons expressed in the district court's decision, we affirm the judgment against Becker Holding on its claims, as well as the court's determination that William Becker was entitled to a judgment for the full amount of the promissory note.  However, Florida law compels the reversal of the district court's decision that William Becker was not entitled to prejudgment interest on the interest portion of the $5 million installment that was due on April 1, 1992.

Florida law has long held that a successful plaintiff must be able to recover the total amount of the pecuniary loss that has been suffered.  Thus, a successful plaintiff is entitled not only to the amount lost, but also to interest on the amount lost in order to compensate the plaintiff for having been deprived of the use of the principal loss amount.  *Argonaut Ins. Co. v. May Plumbing Co.,* 474 So.2d 212, 214-15 (Fla.1985).  The interest awarded to compensate for this deprivation is referred to differently depending on the period of time that the plaintiff is deprived of the principal loss amount:  1) "prejudgment interest" is awarded to compensate a plaintiff for having been deprived of the value of principal losses from the time of loss to the time of

judgment;  2) "postjudgment interest" is awarded to compensate a plaintiff for having been deprived of the value of principal losses from the time of judgment to the time that the plaintiff is actually paid.  Thus, prejudgment and postjudgment interest serve exactly the same purpose, albeit for different time periods:  they make the plaintiff whole for having been deprived of the use of the principal loss amount.  This general system for making the plaintiff whole by ordering prejudgment and postjudgment interest applies in a wide variety of cases involving liquidated damages,[1] including insurance subrogation claims, *see, e.g., Utica Mutual Ins. Co. v. Pennsylvania Nat'l Mutual Casualty Ins. Co.,* 639 So.2d 41 (Fla. 5th D.C.A.1994);  *Aetna Casualty & Surety v. Protective Nat'l Ins. Co.,* 631 So.2d 305 (Fla. 3d D.C.A.1993);  breach of contract claims, *see, e.g., Central Constructors, Inc. v. Spectrum Contracting Co.,* 621 So.2d 526 (Fla. 4th D.C.A.1993);  *City of Tampa  v. Janke Construction, Inc.,*  626  So.2d  239  (Fla.  2d D.C.A.1993);  stock accountings, *see, e.g., LaFaye v. Presser,* 554 So.2d 610 (Fla. 1st D.C.A.1989);  property disputes, *see, e.g., West v. Sunbelt Enterprises,* 530 So.2d 433 (Fla. 1st D.C.A.1988); and mortgage foreclosures, *see, e.g., Ghanbari v. Perrault,* 651 So.2d 1257 (Fla. 1st D.C.A.1995);  *Reilly v. Barrera,* 620 So.2d 1116 (Fla. 5th D.C.A.1993).

In a number of cases, plaintiffs have unsuccessfully sought postjudgment interest on a prejudgment interest award.  *See S & E Contractors v. City of Tampa,* 629 So.2d 883 (Fla. 2d D.C.A.1993);

---

[1]Under Florida law, a successful plaintiff is not entitled to prejudgment interest on personal injury awards because damages are not liquidated.  *Argonaut,* 474 So.2d at 215 n. 1.

*Aetna Casualty & Surety,* 631 So.2d at 310; *Central Constructors,* 621 So.2d at 527; *United Services Automobile Ass'n v. Smith,* 527 So.2d 281, 283-84 (Fla. 1st D.C.A.1988); *West,* 530 So.2d at 436. Because prejudgment interest serves only to compensate the plaintiff for the deprivation of the use of the principal loss amount for a set period of time—from the date of loss to judgment—such compensation is fixed at the time of judgment. Therefore, ordering postjudgment interest on prejudgment interest would overcompensate for the deprivation. Similarly, once judgment is entered the clock is reset and postjudgment interest is awarded only to compensate a plaintiff for the deprivation of the use of the principal loss amount after judgment.

Becker Holding argues that this court should not order prejudgment interest on the interest portion of the $5 million installment payment that was due on April 1, 1992. Becker Holding relies on *S & E Contractors, Aetna Casualty & Surety, Central Constructors, West, Janke Construction,* and *United Services Automobile Ass'n* to argue that ordering prejudgment interest on the interest portion of the delinquent installment would impermissibly compound the interest. However, the cases to which Becker Holding cites are inapposite because none of them involved fully matured and due interest as part of principal losses. Consequently, the courts in those cases were not concerned about compounding the kind of interest that is involved in this case. Instead, those courts refused to order postjudgment interest on prejudgment interest because such compounding of prejudgment interest would overcompensate the plaintiffs for having been deprived of the use

of principal losses. The issue in this case, however, is not whether to award postjudgment interest on a prejudgment interest award, but rather, whether to award prejudgment interest on the interest component of a fully matured installment payment. Thus, *Ghanbari,* 651 So.2d at 1257, and *Reilly,* 620 So.2d at 1118, the only cases that involve fully matured and due interest payments, are on point. In both *Ghanbari* and *Reilly* a mortgagee sought to recover prejudgment interest on the entire amount of a delinquent mortgage payment, including the interest component. Relying on *Argonaut,* the courts held that because both the interest and principal components of the mortgage payment were overdue, prejudgment interest automatically attached to the entire overdue installment. *Ghanbari,* 651 So.2d at 1257; *Reilly,* 620 So.2d at 1118.

Becker Holding contractually agreed to pay William Becker $5 million on April 1, 1992. The $5 million payment consisted of a principal component and an interest component, each computed pursuant to the stock transaction agreement. On April 1, 1992, when Becker Holding refused to pay the agreed upon $5 million payment, the entire $5 million became due and owing. Thus, in order to restore William Becker to where he would have been had Becker Holding not defaulted, William Becker is entitled to the $5 million principal loss amount *plus* compensation for having been deprived of the $5 million from the date he was contractually entitled to it but did not receive it. *See Argonaut,* 474 So.2d 214-15. That is, William Becker is entitled to prejudgment interest on the entire overdue installment payment from April 1,

1992, the date of loss, to March 7, 1994, the date of judgment.

Therefore, William Becker is entitled to prejudgment interest at 10 percent per year, the contractually agreed upon rate, on the $5 million overdue installment. He also is entitled to prejudgment interest at 10 percent on the promissory note's accelerated outstanding principal of $15,849,327.40. Total prejudgment interest at 10 percent calculated from April 1, 1992, to March 7, 1994, is equal to $4,032,772.48. Thus, the total final judgment is $24,882,099.84, which consists of principal damages of $20,849,327.40 and total prejudgment interest of $4,032,772.48.

Accordingly, we affirm the district court's judgment against Becker Holding on its claims, but reverse the court's final damage award to William Becker and remand for an adjustment to damages in accordance with this opinion.

AFFIRMED in part; REVERSED in part; REMANDED.