238 So.2d 487 (1970)
JAMES A. KNOWLES, INC., Appellant,
v.
IMPERIAL LUMBER COMPANY, Inc., Appellee.
No. 70-111.
District Court of Appeal of Florida, Second District.
August 5, 1970.
*488 Ray Ballou and Charles S. Carrere of Roney, Ulmer, Woodworth & Jacobs, St. Petersburg, for appellant.
Richard C. Langford of Tomasello, Campbell, Dunlap & Norris, Bartow, for appellee.
McNULTY, Judge.
Defendant-appellant brings this interlocutory appeal from a denial of its motion to dismiss for improper venue. We reverse.
In the present posture of the case, it undisputedly appears that defendant-appellant James A. Knowles, Inc. (Knowles, hereinafter), a corporation with principal offices in Pinellas County, was the general contractor in the construction of a large motel in Collier County. Imperial Carpentry, Inc. (Carpentry, Inc., hereinafter) was a subcontractor on the job and had a line of apparently questionable credit with plaintiff-appellee (Imperial Lumber, hereinafter), a resident corporation of Polk County. Before supplying Carpentry, Inc. with materials for the job, and as security for further extending such credit, Imperial Lumber requested and received a promise from Knowles to make progress payments, due Carpentry, Inc. on the subcontract, by checks payable jointly to Imperial Lumber and Carpentry, Inc. and to deliver them directly to Imperial Lumber. Unbeknown to Imperial Lumber, Knowles itself "took over" the subcontract in mid-job, and completed it. Meanwhile, notwithstanding its agreement as aforesaid, Knowles thereafter made at least four payments due on the subcontract directly to Carpentry, Inc., without the consent or knowledge of Imperial Lumber. Imperial Lumber instituted this suit in Polk County and claims damages from Knowles for losses suffered on account of the failure of Carpentry, Inc. to pay it for credit extended in reliance upon the promise sued on.
We turn first to the applicable venue statute, § 47.051, F.S.A., which provides in pertinent part:
"Actions against domestic corporations shall be brought only in the county or district where such corporation has or usually keeps an office for transaction of its customary business, or where the cause of action accrued, * * *." [Emphasis supplied]
It must be remembered that the purpose of this and similar statutes[1] is to require that litigation be instituted in the forum which will cause the least amount of inconvenience and expense to those required to respond thereto.[2] Accordingly, these statutes limit the circumstances under which defendants can be sued in a county other than that of their residence, and to that extent such statutes confer a venue privilege in the defendants.[3]
*489 Patently, one of those circumstances in which a corporate defendant may be sued in a forum other than that of its residence under the quoted statute is where the cause of action, i.e., the alleged dereliction of the defendant itself, arose or occurred in such other forum. The necessary result is, therefore, that if plaintiff is to maintain his suit in a county other than defendant's residence, the four corners of his cause of action must circumscribe facts which bring the cause within one of the limitations of the statute. True it is that by the very nature of venue the plaintiff selects it initially.[4] But obviously in a contract action, and because of the statute, plaintiff's choice cannot be predicated solely on the place where he is to enjoy the benefits of his contract. Presumably, indeed, his residence is where he would always enjoy it (assuming performance by the obligor) regardless of the situs wherein it is to be performed. If such were the law, the defendant's statutory venue privilege conferred as aforesaid would thus be a sterile one. It follows, therefore, that the critical determination in all these cases is where performance is called for by the contract, not where its benefits are to be enjoyed.
Imperial Lumber, however, relies on the rule enunciated in Croker v. Powell[5] and restated in M.A. Kite Co. v. A.C. Samford, Inc.,[6] as follows:
"* * * Where a contract involving the payment of money and no place of payment is expressly agreed on, it may be implied that payment is to be made where the payee resides or has an established place of business, and where payment under the contract may be made. Where there is an express promise to pay, and no place of payment is stipulated, the debtor should seek the creditor unless otherwise provided or agreed. In such cases the cause of action accrues where the default occurred, though it be in the county where the plaintiff resides, and the action may be maintained in such county for the defendant's breach." [Emphasis supplied]
But this rule is clearly only applicable when a debtor-creditor relationship exists between defendant and plaintiff and the promise sued on is for the payment of money.[7] In effect, the gravamen of the rule is that payment of the debt is the performance called for by the contract; and in such case, the residence of the payee (i.e., the place of payment) is the place of the required performance, in default of which the cause of action therein accrues.
Here, there is no debtor-creditor relationship. The suit is not on a promise to pay monies owed, unpaid and payable; rather, it is for unliquidated damages allegedly resulting from a breach of a contract of assurance or security. Stated otherwise, the act or omission complained of is not a failure to pay money owed by Knowles, but a failure to aid, in the manner promised, in securing a debt owed by another. In this sense it is akin to a contract for services and thus, in accordance with the general rule, the cause of action accrues where the services are to be performed.[8] Under the stated facts, that place has to be Pinellas County, the principal business situs of Knowles, since it affirmatively appears that performance was not to be accomplished in Polk County, as we've *490 noted, and there is nothing from which it can be said that the promised services were to be performed at the job site in Collier County. Accordingly, it was error to deny appellant's plea of privilege.
Now, Knowles raised the foregoing plea by motion to dismiss pursuant to Rule 1.140, R.C.P., 30 F.S.A. While this procedure is permissible, it appears that a more appropriate motion would have been one to transfer the cause pursuant to Rule 1.060, R.C.P.[9] The order appealed from, which denied the motion to dismiss, is silent as to the grounds on which it was bottomed. We assume, nevertheless, that the trial judge denied the plea on its merits rather than on the technical grounds referred to. We thereupon reverse the order appealed from, and the cause is remanded for further proceedings not inconsistent herewith.
Reversed.
LILES, A.C.J., and PIERCE, J., concur.
NOTES
[1] § 47.011 et seq, F.S.A.
[2] See, e.g., Polar Ice Cream and Creamery Co. v. Andrews (Fla.App. 1st 1962), 146 So.2d 609.
[3] See, e.g., § 34 Fla.Jur., Venue, § 7, p. 11.
[4] Id. at p. 12. See, also, Inverness Coca-Cola Bottling Co. v. McDaniel (Fla. 1955), 78 So.2d 100 and Greyhound Corp. v. Rosart (Fla.App. 3rd 1960), 124 So.2d 708.
[5] (1934), 115 Fla. 733, 156 So. 146.
[6] (Fla.App. 1st 1961), 130 So.2d 99.
[7] Cf. Orlando Auto Auction, Inc. v. Crown Capital Corp. (Fla.App. 1st 1965), 171 So.2d 30; see, also, Mendez v. George Hunt, Inc., (Fla.App. 4th 1966), 191 So.2d 480.
[8] Cf. B & F of Clearwater, Inc. v. Wesley Construction Co., Fla.App., 237 So.2d 790, Opinion filed July 17, 1970; and Mendez v. George Hunt, Inc., n. 3, supra.
[9] See, Foy v. State Road Department (Fla. App. 3rd 1964), 166 So.2d 688, cert. denied, 173 So.2d 147; also, cf. Mendez v. George Hunt, Inc., n. 3, supra.