851 So.2d 289 (2003)
PDM BRIDGE CORP., etc., Appellant,
v.
JC INDUSTRIAL MANUFACTURING, etc., Appellee.
No. 3D03-561.
District Court of Appeal of Florida, Third District.
August 6, 2003.
*290 Smith, Currie & Hancock and F. Alan Cummings (Tallahassee) and S. Elysha Luken (Tallahassee), for appellant.
Rasco Reininger Perez & Esquenazi and Alfonso J. Perez and Cristina Martinez-Padilla, for appellee.
Before GREEN and SHEVIN, JJ., and NESBITT, Senior Judge.
NESBITT, Senior Judge.
The appellant PDM Bridge Corporation ("PDM") appeals from the denial of its motion to dismiss for improper venue. For the reasons stated, we reverse.
Venue here is controlled by § 47.051, Florida Statutes (2002), which, in pertinent part provides: "Actions against foreign corporations doing business in this state shall be brought in a county where such corporation has an agent or other representative, where the cause of action accrued, or where the property in litigation is located."
PDM is a Delaware corporation with its principal place of business in Eau Clair, Wisconsin, and is registered to do business in Florida with a Florida business office in Putnam County. PDM entered into a subcontractor contract (with prime contractor Ballast Needham) relating to a Florida DOT bridge project in West Palm Beach (the "Project"). PDM was to supply certain structural steel components.
Appellee JC Industrial, a Florida corporation doing business in Miami-Dade County, is a machine shop that manufactures specially fabricated metal products, including components for bridges. In February, 2001, JC Industrial supplied PDM a quote for certain bridge operating machinery (approximately $3.9 million), which proposal was used by PDM in bidding for the contract with Ballast Needham. PDM and JC Industrial then engaged in extensive negotiations over a period of months to attempt to enter into a "Purchase Order." These negotiations ultimately reached an impasse in May, 2002, and no Purchase Order contract was ever finalized between PDM and JC Industrial.
However, in December, 2001, prior to their impasse, and while the PDM-Ballast Needham contract was being finalized, PDM sent JC Industrial the "letter of intent" upon which this action is based. The letter of intent stated:
Currently PDM is reviewing our contract with Ballast Needham Construction, Inc. for the above mentioned project. In order to keep the project on schedule, PDM would like to provide you with the "Letter of Intent" to proceed with the ordering of raw materials and preparation of drawings for the "Bridge Operating Machinery" you quoted on February 21, 2001. Total cost of these materials shall not exceed $1,100,000.00.
*291 While the Purchase Order negotiations with PDM were ongoing, JC Industrial ordered materials from some of its suppliers to be used in the fabrication of machinery if those negotiations were successful. On May 30, 2002, PDM sent JC Industrial a letter, from Wisconsin, indicating that an impasse was reached in the attempt to negotiate a Purchase Order, and advising JC Industrial to immediately cease all work on the Project, including material purchasing. JC Industrial released all purchased materials to PDM, who assumed obligations on the purchase orders.
JC Industrial claims that it had commenced to prepare shop drawings as called for in the letter of intent for which it seeks to recover $304,000, and that it also advanced $38,249 for a payment/performance bond that it alleges PDM insisted upon in connection with the Project. In November 2002, J.C. Industrial initiated the instant law suit against PDM in Miami-Dade Circuit Court, asserting breach of contract, promissory estoppel, unjust enrichment and quantum meruit, and claiming PDM has "refused to pay" for the shop drawings and has not reimbursed it for the payment/performance bond premium. All of JC Industrial's claims are based on the letter of intent, which was attached as an exhibit and incorporated into the amended complaint.
PDM moved to dismiss based on, inter alia, improper venue, asserting that proper venue is in Putman County, its Florida location. JC Industrial alleged that the cause of action accrued in Miami-Dade County, by virtue of the "debtor-creditor" rule, essentially alleging that the contract required PDM to make payment to JC Industrial in Miami-Dade County, and that the causes of action accrued there when payment was not made. PDM argued that since the contract sued upon did not establish a debtor-creditor relationship and the action was not to recover on a promise to pay liquidated monies owed, the debtor-creditor rule was inapplicable. After an evidentiary hearing, the trial court ruled that the debtor-creditor rule was applicable, reasoning that the bond premium which JC Industrial sought to recover was "quite liquidated," and that venue was therefore proper in Miami-Dade County. This appeal followed.
The debtor-creditor rule was succinctly summarized in James A. Knowles, Inc. v. Imperial Lumber Company, Inc., 238 So.2d 487, 489 (Fla. 2d DCA 1970):
`* * * Where a contract involving the payment of money and no place of payment is expressly agreed on, it may be implied that payment is to be made where the payee resides or has an established place of business, and where payment under the contract may be made. Where there is an express promise to pay, and no place of payment is stipulated, the debtor should seek the creditor unless otherwise provided or agreed. In such cases the cause of action accrues where the default occurred, though it be in the county where the plaintiff resides, and the action may be maintained in such county for the defendant's breach. But this rule is clearly Only [sic] applicable when a debtor-creditor relationship exists between defendant and plaintiff and the promise sued on is for the payment of money. (Emphasis added).
PDM argues correctly that the special venue rules pertaining to suits to enforce payments on debts do not apply in the absence of a debtor-creditor relationship flowing from an express contractual promise to pay a certain sum of money owed. See Croker v. Powell, 115 Fla. 733, 156 So. 146 (Fla.1934); Clarke v. Cartee, 549 So.2d 722, 724 (Fla. 1st DCA 1989); Earl W. Shomber & Co. v. Florida Casino Associates, *292 Inc., 469 So.2d 936, 937 (Fla. 3d DCA 1985); Brunswick Goldenrod Corp. v. Downsbrough, 156 So.2d 670 (Fla. 3d DCA 1963). These elements are not present in this case. Certainly, if there are monies owed for shop drawings or the bond premium, they are not specified in the letter of intent and are "unliquidated and subject to proof," thus rendering the debtor-creditor venue rule inapplicable. See Magic Wok Intern., Inc. v. Li, 706 So.2d 372, 374 (Fla. 5th DCA 1998); American Fidelity Fire Ins. Co., v. Allied General Contractors, Inc., 365 So.2d 442 (Fla. 3d DCA 1978); American Intern. Food Corp. v. Lesko, 358 So.2d 250 (Fla. 4th DCA 1978).
JC Industrial further urges that Miami-Dade County is a proper venue because its various claims are forms of "general assumpsit" which, it argues, would allow an action to be brought wherever JC Industrial resides, relying primarily upon Saf-T-Clean, Inc. v. Martin-Marietta Corp., 197 So.2d 8 (Fla.1967) and Producers Supply, Inc. v. Harz, 149 Fla. 594, 6 So.2d 375 (1942). The invocation of "general assumpsit" does not change the venue result here as these decisions are also premised upon a debtor-creditor relationship and an express promise to pay, including claims for open account, account stated, or for goods sold and delivered. No such factors are present here.
The circumstances considered, we think the trial court erred in denying PDM's motion, and the order under review is therefore reversed with directions that this matter be transferred to Putnam County.