923 So.2d 1229 (2006)
MORALES SAND & SOIL, L.L.C., a Florida limited liability company, Morales Trucking, Inc., an administratively dissolved Florida corporation, and Armando Morales, individually, Appellants,
v.
KENDALL PROPERTIES & INVESTMENTS, Appellee.
No. 4D05-1954.
District Court of Appeal of Florida, Fourth District.
March 22, 2006.
*1230 Jorge L. Fors and Brian M. Becher of Jorge L. Fors, P.A., Coral Gables, for appellants.
Leonard K. Samuels and Jeffrey S. Wertman of Berger Singerman, Fort Lauderdale, for appellee.
WARNER, J.
Morales Sand & Soil, L.L.C., Morales Trucking, Inc., and Armando Morales, individually *1231 (collectively "Morales"), appeal an order denying a motion to dismiss for improper venue in Broward County, the place of business of the appellee, Kendall Properties & Investments ("KPI"). Morales maintains that it is located in Dade County, the contract was to be performed in Dade County, and the cause of action was one for breach of contract involving unliquidated damages. Morales asserts that this case comes within the exception to the rule that venue lies where payment occurs. We agree and reverse.
In 2003, KPI and Morales Trucking entered into an "Extraction Agreement" in which KPI granted to Morales Trucking the mining rights for the extraction of "fines"[1] from its property in Dade County known as "Old Lake." Morales Trucking paid for the materials on a per ton basis, calculated by each truck passing over certified scales. In addition, Morales Trucking paid the administrative fee to the scale operator. Royalties for the tonnage were to be paid monthly, and Morales Trucking was required to deliver monthly reports to KPI with all scale tickets generated. The written contract did not provide for a place of payment, but all payments were sent to KPI in Broward County. Morales Trucking assigned its interest in the contract to Morales Sand.
Two years later, KPI filed suit against Morales in Broward County, KPI's place of business, in multiple counts for breach of contract, breach of guaranty, unjust enrichment, and for an accounting. It alleged that Morales failed to pay the royalty payments for the material it removed, failed to pay the administrative fees, failed to deliver the monthly reports and scale tickets, failed to pass over the certified scales, and failed to act in good faith. KPI demanded damages, attorney's fees, and costs. Its unjust enrichment count sought a reasonable amount for the materials Morales took from its property. Finally, KPI demanded an accounting for the amount of materials mined from its property.
Morales moved to dismiss the complaint for improper venue. It alleged that it did business in Dade County, and the contract was to be performed in Dade County where the mining operations were conducted. It argued that because the damages were unliquidated, KPI could not rely on the place of payment rule to establish venue. The trial court denied the motion, and Morales appealed.
During the pendency of the appeal, KPI filed an amended complaint and, pursuant to an agreed order, a second amended complaint. In the second amended complaint, KPI alleged for the first time that its damages were $151,480.93. It claimed that it calculated these damages using the "Miami-Dade County Lake Belt Mitigation Fee Monthly Returns," which Morales filed with the Florida Department of Revenue by applying the tonnage rate specified in the extraction agreement to the tonnage reported in the returns. In the second amended complaint, it no longer sued for an accounting but included a count for spoliation of evidence. In that count KPI alleged that it and Morales had agreed that some of Morales' trucks could bypass the certified scales so long as Morales provided KPI with accurate, complete, and sequentially numbered hand tickets generated *1232 by Morales. KPI alleged that Morales failed to preserve these tickets. It asserted:
As a direct and proximate result of Defendants' destruction of the Hand Tickets, and should it be determined that there is an absence of other relevant evidence indicating the number of trucks carrying materials mined, removed or extracted from KPI's property and the weight per truck, KPI will be significantly impaired in its ability to prove the royalty payments due and owing to KPI.

(Emphasis supplied). KPI suggests that the second amended complaint renders this appeal moot because it alleges a liquidated amount of $151,480.93, which it is claiming as damages. As we will explain, this second amended complaint does not make the venue issue moot. In fact, it provides further support for the finding that venue is improper in Broward County.
The general rule regarding venue in contracts is stated in Croker v. Powell, 115 Fla. 733, 156 So. 146, 150-51 (1934):
Where a contract involving the payment of money is made in one county and payments under the contract are to be made in another county, an action for a breach of the promise to pay may be maintained in the county where the payment was agreed to be made, for there the breach occurred and the cause of action accrued; and if no place of payment is expressly agreed on, it may be implied that payment is to be made where the payee resides or has an established place of business, and where payment under the contract may be made. Where there is an express promise to pay, and no place of payment is stipulated, the debtor should seek the creditor unless otherwise provided or agreed. In such cases the cause of action accrues where the default occurred, though it be in the county where the plaintiff resides, and the action may be maintained in such county for the defendant's breach.
However, "this rule is clearly only applicable when a debtor-creditor relationship exists between defendant and plaintiff and the promise sued on is for the payment of money." James A. Knowles, Inc. v. Imperial Lumber Co., 238 So.2d 487, 489 (Fla. 2d DCA 1970). These rules pertain to suits for payments of debts and do not apply in the absence of a debtor-creditor relationship flowing from an express contractual promise to pay a certain sum of money owed. PDM Bridge Corp. v. JC Indus. Mfg., 851 So.2d 289, 291 (Fla. 3d DCA 2003). Where there is no liquidated debt involved, the court must look at the allegations of the complaint to determine where the cause of action accrued and where venue lies. Magic Wok Int'l, Inc. v. Li, 706 So.2d 372, 374 (Fla. 5th DCA 1998). "Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law." Bowman v. Kingsland Dev., Inc., 432 So.2d 660, 662 (Fla. 5th DCA 1983). "However, damages are not liquidated if the ascertainment of their exact sum requires the taking of testimony to ascertain facts upon which to base a value judgment." Id. at 663.
In the first complaint filed by KPI, not only did it fail to allege how much was due and owing from Morales for fines extracted, it demanded an accounting, because Morales failed to properly track the amount of material it extracted under the contract.[2] The first breach of performance *1233 actually sued on is the failure to properly account for the fines extracted. That breach occurred in Dade County where the property and certified scales are located. Without knowing how much material was removed from KPI's land in Dade County, the amount owed could not be determined. The damages are unliquidated.
Although KPI arrives at a dollar figure for its losses in the second amended complaint, it uses a method of calculation which is not part of the contract. Instead of using the scale receipts as called for in the contract, it uses a form Morales allegedly submitted to the Department of Revenue.[3] Thus, it relies on extra-contractual materials to ascertain an amount owed. It simply reinforces the point that the breach is the failure to provide a proper accounting of the materials removed, and KPI will be required to rely on other evidence to prove the amount. Moreover, KPI also brought a spoliation of evidence count in recognition of the fact that the information required under the contractual arrangement to calculate the amount of materials extracted may be missing entirely.
A similar case is Magic Wok, 706 So.2d 372. There, the parties entered into an agreement where Li would bring business investors to Magic Wok and an investment group to open restaurants managed by Magic Wok, and Li would be compensated for a percentage of the gross sales. Li filed suit in Orange County, his place of residence, alleging that the defendants kept different sets of financial records and underreported the income, thus depriving him of a portion of his compensation. Magic Wok moved to change venue to Hillsborough County, where it had its principal place of business. Li asserted that venue was proper in Orange County, because that was the "place of payment" of his compensation. Id. at 373. The trial court denied the motion, but the appellate court reversed, finding that there was no fixed sum of money due, and the money claimed was unliquidated, subject to proof. Li would first have to prove the amount of gross sales before it could apply the percentage of gross sales figures to arrive at his compensation, and his own complaint alleged fraud in the accountings from which this calculation could be made. Thus, the general rule that the debtor must seek the creditor was inapplicable. Id. at 374.
This case is also analogous to Department of Transportation v. Cone & Graham, Inc., 884 So.2d 224 (Fla. 2d DCA 2004). DOT contracted with Cone & Graham, whose offices were in Hillsborough County, for road repairs in Pasco County. The contract contained a provision permitting an adjustment of the price if the actual site conditions were different than what the parties anticipated. Cone & Graham performed additional work due to site conditions and then sued in Hillsborough County for the additional costs of performing the work. No dollar amount of the adjustment was alleged in the complaint. DOT moved to transfer venue to Pasco County, the place of performance of the work. Cone & Graham resisted, claiming that its offices were the place of payment, and it was suing for money owed on the contract based upon the extra work performed. The trial court denied the motion for change of venue, agreeing with Cone & Graham that the place of payment rule applied.
The second district reversed. Relying on PDM Bridge and Magic Wok, the court *1234 determined that the claim was not one for a sum certain of liquidated damages. Not only was the claim not based upon a sum certain due under the contract, Cone & Graham alleged a breach by the DOT in the adjustment provision of the contract. Similarly, in this case KPI claims that Morales breached its contract by failing to properly account for the tons of fines extracted from the property. Thus, it concedes that the amount of material extracted is not known based upon the method of ascertainment set forth in the contract. KPI must first prove the amount of fines removed from its property in Dade County before it can apply the tonnage price established in the contract. Dade County is the place of performance of the extraction, as well as where all books and records from which this must be taken. Just as in Magic Wok, the sum due is unliquidated, and the general place of payment rule does not apply.
This is not a case like the sale of goods where the vendor ships a known quantity of goods to a purchaser who then fails to pay for them. In that case, the breach is the failure to pay a known sum, and the Croker v. Powell rule applies. See Am. Thermoplastic Extrusion Co. v. Tackett Plastics, Inc., 527 So.2d 953 (Fla. 3d DCA 1988). It is more like a failure to make an accounting, which cause is not governed by the Croker rule. See, e.g., Am. Int'l Food Corp. v. Lesko, 358 So.2d 250 (Fla. 4th DCA 1978).
We therefore reverse and remand with directions to transfer this case to Dade County.
STEVENSON, C.J., and MAY, J., concur.
NOTES
[1] The contract does not define what "fines" are. From other cases, we conclude that these are certain very tiny particles of sand or clay. See, e.g., Ellwood Engineered Castings Co. v. Zaino, 98 Ohio St.3d 424, 786 N.E.2d 458, 460 (2003); Youngdale & Sons Constr. Co., Inc. v. U.S., 27 Fed.Cl. 516, 531 (Fed.Cl. 1993); Weeks Dredging & Contracting, Inc. v. U.S., 13 Cl.Ct. 193, 205 (Ct.Cl.1987) ("various subsurface materials (i.e., sands, clays, fines, eutaw, and gravel)") (emphasis supplied).
[2] It also alleged that Morales breached the contract by failing to pay the certified scale operator the administrative fees. These fees were to be paid in Dade County, not to KPI.
[3] In its reply brief, Morales maintains that the tonnage of materials reported on the form includes materials that it extracted from other properties in addition to KPI's property.