587 So.2d 1370 (1991)
AETNA CASUALTY & SURETY COMPANY, Appellant/Cross-Appellee,
v.
Edward LANGEL & Joan Langel, Appellee/Cross-Appellants.
Nos. 90-0783, 90-0803.
District Court of Appeal of Florida, Fourth District.
October 2, 1991.
Rehearing/Clarification Denied November 26, 1991.
*1371 Kimberly A. Ashby of Maguire, Voohis & Wells, P.A., Orlando, for appellant.
Emory C. Teel, III, Fort Pierce, for appellees.
Louisa H. Smith-Adam of Colin & Smith-Adam, Lake Worth, for appellee-Searcy, Denney, Scarola, Barnhart & Shipley, P.A.
C.R. McDonald, Jr., P.A., Fort Pierce, pro se appellee as former attorney for Langels.
McNULTY, J., Senior Judge.
These consolidated appeals arise out of a declaratory judgment/personal injury action initially brought by Aetna to determine the question of whether appellee Edward Langel was covered under a $300,000 uninsured motorist policy issued to his mother-in-law, *1372 Ann Strange. The Langels prevailed on the coverage issue and the case proceeded to trial on the personal injury aspect.[1]
Briefly, the facts of the underlying accident are that Edward Langel was a passenger in his brother Dennis' Datsun sports car. Both had unlawful blood alcohol levels and Dennis was uninsured.
Dennis lost control of the car and ran into a bridge railing at a high rate of speed. Edward was able to get out of the car, but remained in the vicinity of the wreck.
One Richard Ray, another uninsured motorist, was driving then and there over the bridge and attempted to swerve to avoid Dennis' car, which was sitting in the roadway. Ray's car struck Edward.
Prior to the filing of the instant action, the Langels had settled their claims under Edward's own UM policy, also issued by Aetna, for $100,000. Aetna also paid $30,000 for PIP and medical payments and $15,000 for attorney's fees and interest.
The jury awarded damages in the instant case and found that there were indeed two accidents, but that they could not apportion damages as between them. They also found Ray was not negligent, that Dennis was negligent and that Edward was 10% comparatively negligent. A general verdict of $450,000, less the 10% of comparative negligence, resulted in a judgment for the Langels against Aetna for $405,000.
Aetna appealed on several grounds but this court rejected them all, except that we remanded:
... for an evidentiary hearing on the amount of collateral source benefits previously paid to appellees and for entry of an amended final judgment which reflects the set-off as determined by said hearing.
Aetna Casualty & Surety v. Langel, 545 So.2d 466 (Fla. 4th DCA 1989).
On remand the trial court held the evidentiary hearing ordered but, at the same time, entertained applications by the Langels' various attorneys for attorneys fees.[2]
As to the "collateral source benefits" paid in the prior settlement under Edward's own UM policy, the trial court allowed a set-off for the $100,000 "settlement" but denied a set-off for the $30,000 in PIP and medpay and for the $15,000 attorneys fees and interest paid.
Additionally, the trial court determined that pre-judgment interest on the net judgment of $305,000.00 (i.e., $405,000 less the $100,000 settlement amount allowed) would run from the date of the release under the settlement, which was some three years prior to the order.
Finally, as to Aetna, the trial court without explanation awarded $38,000 in attorneys fees, payable by Aetna, to two of the Langels' attorneys.
Aetna here assails the foregoing, except of course the allowance of the $100,000 set-off for the earlier settlement, and the Langels cross-appeal as to the latter. In the consolidated appeal, the Langels also seek reversal of a portion of the attorneys fees awards assessed against them.
We first consider the cross-appeal from the allowance of the $100,000 set-off together with Aetna's appeal from the denial of PIP and medpay as set-offs, the resolutions of which to a great extent are interrelated.
To begin with, the $100,000 settlement was paid to the Langels pursuant to Edward's own UM policy, and thus by contract, and was clearly in settlement of their claims for damages suffered in one or both accidents. The PIP and medpay, as noted, were paid over and above such sum. Therefore, the $100,000 settlement could only have included intangible or other losses *1373 and by definition was not a "collateral source" within the purview of § 627.7372, Fla. Stat. (1989). Accordingly, the settlement could not have been within the contemplation of this court in the prior appeal which expressly remanded for a hearing on "collateral source benefits".
Nevertheless, an UM settlement amount may still be set off if it duplicates damages otherwise awarded. Section 627.727(1), Fla. Stat. (1989); Geico v. Brewton, 538 So.2d 1375 (Fla. 4th DCA 1989). But the burden is on the UM carrier to demonstrate that the settlement to whatever extent constituted a duplication of the amount awarded by the jury. Bergmann v. Sentry Insurance, 422 So.2d 972 (Fla. 4th DCA 1982).
Here, the Langels argued at trial and Aetna conceded, $46,000 in past medical expenses and $299,000 in future rehabilitation expenses, a total of $345,000. The main dispute involved the amount of the Langels' future medical expenses, lost earnings and intangibles.
The jury returned a general verdict for $450,000 which is $105,000 more than the $345,000 in effect stipulated to before the jury. Moreover, there is every indication  and no reason to believe otherwise  that the amount awarded by the jury was the total amount of damages suffered by the Langels in the two accidents and that the amount awarded over and above the stipulated amounts included intangibles as well as the disputed future special damages. This conclusion is bolstered by the jury's expressed inability to apportion the damages, the necessary implication being that the award covered both accidents.
Clearly, the damages finally awarded by the jury included the damages contemplated by the $100,000 settlement. The "common sense" of the matter demonstrates duplication. Cf., Centennial Ins. Co. v. Fulton, 532 So.2d 1329 (Fla. 3d DCA 1988). It therefore would be inequitable to deny a set-off for the settlement and, as to this, the trial court was correct.
By a parity of reasoning, however, the trial court was wrong in disallowing a set-off for the PIP and medpay, which in any case were "collateral sources," pursuant to § 627.7372. The total jury award logically must have included the most basic elements of damages such as those for which PIP and medpay are payable in the first place. Again, the "common sense" test employed in Fulton demonstrates duplication of damages awarded by the jury. PIP and medpay therefore should have been set off as collateral sources.
In calculating the exact amount of the set-offs, however, both the settlement amount and the PIP and medpay should be reduced by 10%. Because of Edward's comparative negligence, his total award was reduced by that percentage and thus, to that extent, the foregoing payments were not duplicative. Cf. Centennial Ins. Co. v. Fulton.
As to the $15,000 paid in the settlement for attorneys fees and interest, on the other hand, Aetna has failed to demonstrate that such amounts duplicate any damages otherwise recovered or recoverable by the Langels as a result of either accident. There initially was a coverage question on Edward's policy, as well; and for ought that appears the attorneys fees and interest paid in that settlement were sanctions for delayed payment of an insurance claim, pursuant to § 627.428, Fla. Stat. 1989. Moreover, they are not "collateral source" payments within the purview of § 627.7372. Properly they were not set off.
We now come to Aetna's second point on appeal, that relating to the allowance of pre-trial interest dating back to the date of the initial settlement some three years earlier. The trial court determined that this case is a contract action, i.e., an action on the UM provisions of the policy, and not a personal injury action as such; ergo, the pre-judgment interest.
However, the law now appears settled to the contrary on the point. In Cooper v. *1374 Aetna Casualty & Surety, 485 So.2d 1367 (Fla. 2d DCA 1986), an action under a UM policy, our sister court said at 1368:
"... although the [plaintiffs'] action was based upon a contract of insurance, it was still essentially one for the recovery of personal injury damages, and, accordingly, the [plaintiffs] were not entitled to pre-judgment interest."
This court agreed in United Services Auto. Ass'n, v. Strasser, 530 So.2d 1026, 1027 (Fla. 4th DCA 1988), and therein affirmed the denial of pre-judgment interest. The trial court was wrong here, then, in allowing it.
Aetna's final point on appeal relates to the award of $38,000, payable by Aetna, to two of the Langels' attorneys. Neither the trial court nor the Langels explain the basis, statutory or otherwise, for such an award. As noted, Aetna initially paid attorneys fees in the earlier settlement, presumably payable on the disputed coverage question. Additionally, attorneys fees properly were awarded prior to the first appeal for litigating the coverage question in the instant case, from which award no appeal was taken. Lastly, the Langels' application for appellate attorneys fees in the first appeal was denied by this court and such fees cannot thereafter be awarded by the trial court absent directions, which were not given. Carl v. Erickson, et ux, 394 So.2d 1022 (Fla. 4th DCA 1980). So they are not payable as appellate fees.
In sum, we can find no valid basis for an award of additional attorneys fees payable by Aetna to the Langels or to any of their attorneys. The trial court was in error in awarding them.
All other points argued or raised on Aetna's appeal and the Langels' cross-appeal are without merit.
The Langels' consolidated appeal relating to attorneys fees is also without reversible merit. No prejudicial error has been made clearly to appear.
In view of the foregoing, therefore, we affirm in part, reverse in part and remand for further proceedings not inconsistent herewith.
GUNTHER and GARRETT, JJ., concur.
NOTES
[1] Edward was found to be a "resident" in Ann Strange's household, and additionally it was determined that the UM policy covered more than one accident.
[2] The Langels were represented by a total of five different attorneys or firms during the several torturous phases of this litigation.