GREEN, J.
On this appeal, appellants, Fidelity Guaranty Insurance Underwriters, Inc. and United States Fidelity and Guaranty Company (collectively “USF & G”) appeal an adverse final summary declaratory judgment determining that appellees, Federated Department Stores, d/b/a Bloomingdale’s (collectively “Bloomingdale’s”), and Bernard Kroll, individually, were entitled to insurance coverage under its policy.[1] On cross-appeal, the appellees assert *898 that the trial court erred in failing to award them pre-judgment interest. For the reasons outlined herein, we affirm the final summary judgment and reverse the order denying pre-judgment interest to the appellees.
I. BACKGROUND
Bloomingdale’s department store, located at the Falls Shopping Center in Miami-Dade County, Florida, sustained severe structural damage as a result of Hurricane Andrew in August, 1992. After an investigation, Bloomingdale’s concluded that its building construction and design had not been in compliance with numerous requirements of the South Florida Building Code at the time of the storm. Bloomingdale’s filed suit against the general contractor, Bernard Kroll, individually, and several of his companies.
Mr. Kroll had been the permit holder/qualifying agent for the construction of the Bloomingdale’s store as well as its licensed general contractor.[2] The building permit remained in Kroll’s name throughout the completion of the project. At the commencement of the construction, Kroll was an officer and director of Kroll Enterprises, Inc. (“Kroll I”) and its wholly owned subsidiary, Kroll Construction Company. Kroll sold his ownership interest in these companies and formed B.K. General Contractors, Inc. in January, 1984. Kroll, however, remained the permit holder/qualifying agent for the Bloomingdale’s project. He transferred his general contracting license from his old company to his new company, B.K. General Contractors. Kroll continued to provide construction services to the Bloomingdale’s project through B.K. General Contractors, of which he was an officer, director, and sole shareholder. Further, Kroll personally, and as president of Kroll Enterprises, Inc., granted Kroll Construction Company performance for the Bloomingdale’s project.
After Kroll sold all of his stock and interest in Kroll I, that company’s name was changed to Coutinho Construction International, Inc. (“Coutinho Construction”), and Coutinho Construction was sued in Bloomingdale’s underlying action as a company formerly known as Kroll Enterprises, Inc. Additionally, on February 11, 1985, Kroll Construction Company changed its name to Coeng Enterprises, Inc. (“Coeng Enterprises”), and this entity was sued in the underlying action as a company formerly known as Kroll Construction Company.
On February 19, 1986, Kroll formed a second corporation which was also named Kroll Enterprises, Inc. (“Kroll II”). Like Kroll I, Bernard Kroll was its president and director.[3] Kroll II was an active business entity on the date of the losses alleged in Bloomingdale’s underlying litigation.
II. THE USF & G POLICY
Kroll had purchased a “completed operations coverage” policy from USF & G. This policy was issued in 1991, and was in effect at the time of the alleged losses. The policy identified the “named insured” as:
BK GENERAL CONTRACTORS, INC.
AND KROLL; CMT, INC.
KROLL ENTERPRISES, INC.
KROLL REPUBLIC, INC.
*899 B.K. GENERAL CONTRACTORS OF NEW JERSEY
Suite 275,150 Interstate North Pkwy. Atlanta, GA 30339
The policy stated that it also provided coverage for the officers, directors, and sole shareholders of B.K. General Contractors, Inc. (i.e. Kroll). The policy also contained an exclusion for liability contractually assumed by the insured.[4]
USF & G defended Kroll in Bloomingdale’s suit with a reservation of rights, but maintained that it owed no duty to indemnify him under its policy. Kroll and his companies disputed this and demanded that they be provided a full defense and indemnification.
III. SETTLEMENT AND INSURANCE DECLARATORY SUIT BELOW
During the pendency of Bloomingdale’s suit, a settlement agreement was reached between Bloomingdale’s, Coutinho Construction (the successor corporation for Kroll I), Kroll individually, and USF & G. According to the terms of this agreement, the parties agreed, inter alia, that USF & G would make an immediate payment to Bloomingdale’s, USF & G would litigate coverage with Kroll and his companies, as well as Bloomingdale’s in a declaratory action, and if coverage was found to exist for any claims brought against Kroll or his companies, USF & G would pay, in addition to amounts previously paid, the full amount of its indemnity coverage plus an additional 55%. Pursuant to this agreement, the appellees filed the declaratory action below against USF & G seeking to establish the existence of an indemnity obligation under the USF & G policy for claims asserted against Kroll and/or the Kroll entities in the Bloomingdale’s litigation.
Cross-motions for summary judgment on the coverage issue were subsequently filed. The material undisputed facts established from the record evidence in support of these motions were as follows:
1. The named insureds listed under the USF & G policy at issue were:
BK GENERAL CONTRACTORS, INC.
AND KROLL; CMT, INC.
KROLL ENTERPRISES, INC.
KROLL REPUBLIC, INC.
B.K. GENERAL CONTRACTORS OF NEW JERSEY
Suite 275,150 Interstate North Pkwy.
Atlanta, GA 30339
2. The policy provides completed operations coverage.
3. There is no policy requirement that any of the named corporate insured be an active company during the policy period.
4. Kroll I was involved in the construction of Bloomingdale’s at least through the summer of 1984 and remained liable for the defective construction of the store through the running of the applicable statute of limitations period.
5. Bernard Kroll was individually liable for the defective construction of Bloomingdale’s by virtue of being the permit holder/qualifying agent for the construction.
*900 6. Kroll sold his interest in Kroll I and its subsidiary Kroll Construction Company in January, 1984, but continued to be the permit holder/qualifying agent for the Bloomingdale’s construction. Kroll also continued to provide construction services to the project.
7. Kroll formed B.K. General Contractors, Inc. in January 1984 and continued to provide construction services to the Bloomingdale’s project as its sole shareholder.
8. The USF & G policy provides coverage for B.K. General Contractors, Inc. and its officers, directors and sole shareholder.
9. The claims asserted against Kroll in the underlying action were limited to his role as the qualifying agent for the general contractor, Kroll Construction Company, and as personal guarantor of Kroll Construction Company’s obligations, and the claim asserted against Kroll Enterprises, Inc. was under the guaranty.
10. The guaranty was executed by Kroll on May 26, 1983 individually and as president of Kroll I. It personally and unconditionally guaranteed Kroll Construction Company’s performance to Bloomingdale’s under the 1982 contract for the construction of the Bloomingdale’s store.
11. Kroll I was the party to the guaranty at issue with Bloomingdale’s.
12. Kroll Construction Company was a wholly owned subsidiary of Kroll I as of the date of the construction contract.
13. In January 1984, Kroll, after the execution of the construction con-trad and guaranty, sold all of his stock in Kroll I and resigned as its officer and director.
14. Kroll I changed its name to Coutin-ho Construction International, Inc. and was sued in the underlying suit as a company formerly known as Kroll Enterprises, Inc.
15. On February 11, 1985, Kroll Construction Company changed its name to Coeng Enterprises, Inc. and Coeng Enterprises was sued in the underlying suit as a company formerly known as Kroll Construction Company.
16. On February 19, 1986, Kroll formed a second corporation with the name Kroll Enterprises, Inc. (“Kroll II”) and was its president and director.
The dispositive issue for the respective cross-motions for summary judgment was which of the two Kroll Enterprises, Inc. (i.e. Kroll I or Kroll II) was the named insured under USF & G’s policy. USF & G took the position that Kroll II was its named insured under the policy since Kroll I and not Kroll II was involved in the Bloomingdale’s construction project and underlying litigation, and Kroll had sold all of his interest in Kroll I prior to the issuance of this USF & G policy. Kroll, on the other hand, responded that Kroll I was indeed a named insured on USF & G’s policy. According to Kroll, he purchased “completed operations coverage” from USF & G for Kroll I to protect it and himself against potential ongoing legal liabilities for latent structural defects which manifested themselves only years later.[5] Moreover, Kroll pointed out that USF & G’s policy did not limit coverage to only *901 those business entities in which Kroll currently had an active interest.
The trial court granted summary judgment in favor of the appellees and found that both Kroll and Kroll Enterprises, Inc. were covered under USF & G’s policy for the underlying suit. In its final judgment, the trial court awarded post-judgment interest, but not pre-judgment interest. The instant appeal and cross-appeal were then taken.
On the main appeal, USF & G argues that the trial court erred in finding that the appellees had coverage under USF & G’s policy. First, USF & G asserts that the entry of summary judgment for Kroll Enterprises, Inc. was error because a latent ambiguity exists for which extrinsic evidence is required to be taken to determine which Kroll Enterprises, Inc. was the named insured under its policy. Further, USF & G maintains that the record evidence supports its assertion that Kroll II, rather than Kroll I, was the intended named insured, and since Kroll II was not involved in the Bloomingdale’s construction project or the underlying litigation, no coverage is available. For this reason, USF & G asserts that there is similarly no coverage for Kroll, individually, because for coverage to exist, Kroll’s acts must have arisen out of the business of a named insured. USF & G further maintains that Kroll’s name individually, on its policy as an insured is a mere scrivener’s error as both Kroll and his agent testified that their intent was to have Kroll covered to the extent of his liability as an officer or employee of the corporations that were named insureds. For these reasons, USF & G contends that it is entitled to have summary judgment entered in its favor or at the very least, have the summary judgment entered in favor of appellees reversed and have this cause remanded for extrinsic parol evidence to be taken as to the intent of the parties. The appellees respond that the undisputed record evidence established that both Kroll, individually and Kroll I were named insureds under USF & G’s policy. Alternatively, but equally important, they maintain that any ambiguity as to which Kroll Enterprises, Inc. was the named insured under the policy has to be construed in their favor as a matter of law. For that reason, they urge that the final summary judgment in their favor was appropriately entered.
On the cross appeal, the appellees further maintain that they are entitled to prejudgment interest. They assert that they are entitled to it as a matter of right under section 55.03, Florida Statutes (2001), and where it was not otherwise expressly waived in the parties’ settlement agreement.
IV. MAIN APPEAL
As to the main appeal, we agree with the trial court’s determination that coverage under the USF & G policy must be afforded to both Kroll Enterprises, Inc. and Kroll individually. First of all, this policy undisputedly insured a Kroll Enterprises, Inc., and a Kroll Enterprises, Inc. was sued in the underlying Bloomingdale’s litigation. On the one hand, the insurer essentially argues that there is no coverage because its policy was only intended to insure Kroll II. On the other hand, Kroll maintains that he paid USF & G premiums for coverage for Kroll I. We agree with the appellees that any ambiguity as to which Kroll Enterprises, Inc. was covered under the policy has to be liberally interpreted in favor of the insured and strictly against the insurer in accordance with well-entrenched Florida law. See Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla.1997); Siegle v. Progressive Consumers Ins. Co., 788 So.2d 355, 359 (Fla. 4th DCA 2001); U.S. Fid. & Guar. Co. v. Romay, 744 So.2d 467, 471 (Fla. 3d DCA *902 1999); Utica Mut. Ins. Co. v. Pa. Nat’l Mut. Cas. Ins. Co., 639 So.2d 41, 43 (Fla. 5th DCA 1994); Nat’l Merch. Co., Inc. v. United Serv. Auto. Ass’n, 400 So.2d 526, 532 (Fla. 1st DCA 1981); Drisdom v. Guar. Trust Life Ins. Co., 371 So.2d 690, 692 (Fla. 3d DCA 1979); Travelers Ins. Co. v. C.J. Gayfer’s & Co., Inc., 366 So.2d 1199, 1201 (Fla. 1st DCA 1979).
If USF & G, as the drafter of this policy, wanted to limit its coverage only to a business entity in which Kroll currently had an active interest (i.e. Kroll II), it certainly could have done so in clear, unambiguous language. By failing to so limit coverage in its policy, USF & G cannot now insist upon a more restrictive interpretation of coverage under its policy. See Nat’l Merck, 400 So.2d at 530 (stating that: “The insurer cannot, by failing to define the terms ‘auto accident’ or to include any additional qualifying or exclusionary language, insist upon a narrow, restrictive interpretation of the coverage provided.”). There was nothing in USF & G’s “completed operations” policy to preclude Kroll from insuring his former company (i.e. Kroll I). Moreover, given the fact that both Kroll individually and Kroll I had continuing exposure or liability for this project, it was perfectly reasonable for Kroll to want to do so.
Since we conclude that coverage existed for Kroll I as a named insured, it necessarily follows that Kroll individually was also covered under USF & G’s policy. That is because the policy also provided “completed operations” coverage for officers and directors of the named insureds. We therefore need not consider USF & G’s alternative arguments, and turn our attention to the cross-appeal.
V. CROSS-APPEAL
The appellees assert that the trial court erred in not awarding them pre-judgment interest where it is an element of pecuniary damages and where their settlement agreement with USF & G did not contain an explicit waiver of pre-judgment interest. The insurer responds that pre-judgment interest was properly denied by the trial court where pursuant to the terms of the parties’ settlement agreement, its payment obligation to the appellees was outlined therein and triggered only if and when the appellees prevailed in this insurance declaratory action.[6] Thus, the insurer maintains that the only reasonable construction of the settlement agreement is *903 that pre-judgment interest was waived as there is no right to payment until judgment was entered.
We agree with the appellees that they are entitled to an award of pre-judgment interest where there was no explicit waiver of the same in the settlement agreement. Pre-judgment interest is recognized as merely another element of pecuniary damages such that when a verdict liquidates damages on a plaintiffs out-of-pocket pecuniary losses, plaintiff is entitled, as a matter of law, to pre-judgment interest at the statutory rate from the date of that loss. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 214-15 (Fla.1985). Florida, like other jurisdictions, has adopted the “loss theory” approach to pre-judgment interest. Under this approach,
neither the merit of the defense nor the certainty of the amount of loss affects the award of prejudgment interest. Rather, the loss itself is a wrongful deprivation by the defendant of the plaintiffs property. Plaintiff is to be made whole from the date of the loss once a finder of fact has determined the amount of damages and defendant’s liability therefor.
Id. at 215; see also Nielsen-Miller Constr. Co. v. Pantlin/Prescott, Inc., 602 So.2d 1366, 1367 (Fla. 4th DCA 1992).
Contrary to the argument advanced by USF & G, the fact that there was an honest and bona-fide dispute between the parties as to whether there was coverage under the policy (and hence a debt due) has no bearing on the question of pre-judgment interest. See Lumbermens Mut. Cas. Co. v. Percefull, 653 So.2d 389, 390 (Fla.1995), citing Parker v. Brinson Constr. Co., 78 So.2d 873, 874 (Fla.1955). The rule is that if it is finally determined that the debt was due, the person to whom it was due is entitled not only to the payment of the principal of the debt but to interest at the lawful rate from the due date thereof. Id. Thus, in this case, where the parties stipulated to an amount to be paid once a judgment for coverage was rendered, the damages became liquidated as of the date of the stipulation and pre-judgment interest began to run from that date. See Underwriters Ins. Co. v. Kirkland, 490 So.2d 149, 154 (Fla. 1st DCA 1986).
For all of the foregoing reasons, we therefore affirm the summary judgment under review, but reverse that part which denied pre-judgment interest and remand with directions that such interests be awarded.
Affirmed in part and reversed in part with directions.

. Although International Insurance Company was a named appellant to this appeal, the parties stipulated to its dismissal prior to oral *898 argument. For that reason, no further reference will be made to this party.

. See section 302.1(d), S. Fla. Bldg.Code (1979 & 1984 eds.); section 553.73, Fla. Stat. (1991).

. The sale agreement under which Kroll sold his interest in Kroll I and Kroll Construction Company had precluded Kroll from using the name ''Kroll” or any derivative thereof as a corporate name for a period of one year.

. Exclusion b. provides that the coverage did not extend to:
"Bodily injury” or "property damage” to which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) Assumed in a contract or agreement that is an "inured contract,” provided the "bodily injury" or "property damage” occurs subsequent to the execution of the contract or agreement; or
(2) That the insured would have in the absence of the contract or agreement.

. Florida's applicable statute of repose for actions for such defects is 15 years. See section 95.11-3(c), Fla. Stat. (1991).

. Specifically, the settlement agreement provides:
8. If a final order or judgment is entered in the insurance action, including any appeals therefrom, determining that USF & G policy, for any portion of the claims asserted against Kroll or the Kroll entities in the underlying litigation, USF & G will pay to plaintiffs above and beyond the previously paid one hundred fifty thousand ($150,-000.00) dollars, an additional one million five hundred fifty thousand ($1,550,000.00) dollars in full and final satisfaction of any further obligation allegedly existing under the USF & G policy or otherwise the "Additional USF & G Payment” ...
[[Image here]]
14. Except for the enforcement of this agreement and USF & G’s ... potential indemnity obligations under paragraph 8 ... of this agreement, the plaintiff releasors and the Kroll releasors hereby release the insurer releasors from any and all claims ... already sustained or which may hereafter be sustained or allegedly sustained in consequence of, arising out of, resulting from, or relating to those allegations, claims, counterclaims, or defenses raised or which could have been raised in the underlying litigation ... and, as specifically related to these same matters released by this paragraph 14, under or arising out of USF & G’s ... obligations for the claims asserted or which could have been asserted in the underlying litigation under the USF & G policy ...