988 So.2d 1130 (2008)
Linda SCHEIBLE, as Personal Representative of the Estate of Madeline Neumann, Deceased, Appellant,
v.
The JOSEPH L. MORSE GERIATRIC CENTER, INC., Jaimy H. Bensimon, M.D., Jaimy H. Bensimon, M.D., P.A., Appellees.
No. 4D07-3064.
District Court of Appeal of Florida, Fourth District.
July 30, 2008.
*1131 Jack Scarola and Mara Ritchie Poncy Hatfield of Searcy Denney Scarola Barnhart & Shipley, P.A., and Marnie Ritchie Poncy of Legal Aid Society of Palm Beach County, West Palm Beach, for appellant.
Rachel Studley and Michele I. Nelson of Wicker, Smith, O'Hara, McCoy & Ford, P.A., West Palm Beach, for appellee The Joseph L. Morse Geriatric Center, Inc.
SHAHOOD, C.J.
Linda Scheible, as personal representative of the Estate of Madeline Neumann, appeals from the Final Judgment of the trial court in her favor and against the appellee, The Joseph L. Morse Geriatric Center, Inc., and from the trial court's order denying her motion for prejudgment interest. We affirm.
This case arises out of the death of Madeline Neumann at The Joseph L. Morse Geriatric Center, a nursing home, in 1995. Mrs. Neumann was admitted to Morse in December 1992 at the age of 89. At the time, she had an admitting diagnosis of senile dementia and a seizure disorder. At the time of admission, Mrs. Neumann's granddaughter, Linda Scheible, presented Morse with a living will/advance directive previously signed by herself and Mrs. Neumann that stated there were to be no life-prolonging treatments or resuscitative measures taken on Mrs. Neumann's behalf if she had a terminal condition or was in the process of dying. Mrs. Neumann named Linda Scheible as her healthcare surrogate.
On the evening of October 17, 1995, nursing home staff found Mrs. Neumann unresponsive in her bed. She was breathing, but staff could not obtain her vitals. They called 911. EMS arrived, intubated Mrs. Neumann, administered dopamine, and took her to the hospital. During transport, Mrs. Neumann attempted to remove the tubing and her hands were placed in physical restraints. On October *1132 19, 2005, Mrs. Neumann was extubated. She remained in the hospital until her death on October 23, 1995. The immediate cause of death was cardiopulmonary arrest.
Appellant filed a complaint against Morse in August 1997 alleging willful disregard of advance health care directive under chapter 765, Florida Statutes (1995), willful disregard of the federal patient self-determination act, common law intentional battery, and violation of the Nursing Home Resident's Rights Act (section 400.022(1), Florida Statutes (1995)). Appellant later amended the complaint to add a breach of contract claim[1] and add Dr. Jaimy Bensimon and Dr. Jaimy Bensimon, P.A. as defendants, and again later to add a negligence claim. Morse succeeded in getting summary judgment granted as to the health care advance directive count and the violation of the federal patient self-determination act count on the grounds that no private cause of action existed under those statutes.
While the case was proceeding, this court issued its opinion in Beverly Enterprises-Fla., Inc. v. Knowles, 766 So.2d 335 (Fla. 4th DCA 2000), holding that section 400.023, Florida Statutes, provided for the personal representative of a deceased to bring a cause of action for violation of nursing home resident's rights "only when the deprivation or infringement of the resident's rights caused the patient's death." 766 So.2d at 336 (emphasis in original). Morse sought summary judgment based on its argument that in light of Knowles, appellant's claim could not succeed since it did not allege that Morse caused Mrs. Neumann's death and there was no evidence to support that conclusion.
The trial court granted Morse's motion for summary judgment as to violation of nursing home resident's rights, pursuant to Knowles. The Supreme Court of Florida later upheld this court's decision in Knowles, specifically agreeing that section 400.023, Florida Statutes, provides that the personal representative of an estate may bring an action against the nursing home for violation of the patient's bill of rights only when the deprivation or infringement caused the patient's death. Knowles v. Beverly Enters.-Fla., Inc., 898 So.2d 1, 6 (Fla.2004).
This case went to jury trial on the battery, negligence, and breach of contract counts. The jury returned a verdict finding Dr. Bensimon not liable for battery or negligence, but finding that Morse breached its contract with Mrs. Neumann. The jury awarded $150,000 for breach of contract damages.
Appellants filed a motion for entry of judgment and requested therein that the court attach prejudgment interest to the verdict from the date of loss. Appellants claimed that as a matter of law, such prejudgment interest is an element of pecuniary damages that attaches to a verdict on a claim for breach of contract. Morse opposed the inclusion of prejudgment interest, arguing it should be denied because appellant's claim was essentially for the recovery of unliquidated personal injury damages, appellant did not suffer the loss of a vested property right, and the amount of damages could not be conclusively ascertained prior to trial. The trial court denied appellant prejudgment interest.
Appellant argues that the trial court's ruling was in error because: (1) it concludes that the language of section 400.023, Florida Statutes (1995), "when the cause of death results from the deprivation" *1133 to unambiguously require the deprivation to be the cause of death rather than an act which results in the cause of deaththus it deletes words from the statute; (2) it ignores the illogical effect such an interpretation of the phrase has upon the provisions of 400.023(4) which expressly contemplates deprivations of the right to refuse care that result in death; (3) it renders the NHRRA right to refuse care of section 400.022(k), Florida Statutes (1995), meaningless; (4) it creates an unconstitutional requirement; and (5) it discriminates unfairly against those who express their constitutional right to health care self-determination by prohibiting life-prolonging treatment.
Appellant's argument presents a question about causation. The theory begins with the premise that Mrs. Neumann was suffering from respiratory arrest when she was found in a non-responsive state by the nursing home staff. Had her wishes been followed and no resuscitative measures been taken, appellant urges she would have expired naturally from that condition. But since she was provided with the care she did not want, appellant argues the immediate cause of her death was cardiopulmonary arrest. The question is therefore whether one who is already in the process of dying has a cause of action based on allegations that resuscitative measures were taken contrary to their expressed will, and the measures result in a manner of death other than that which would have occurred absent those measures. Appellant therefore characterizes the measures taken that prolonged Mrs. Neumann's life as an intervening cause of her death.
Despite appellant's argument, the holding of this court in Knowles, and the supreme court's opinion affirming it, is that deprivation of the right to refuse health care cannot constitute a legal cause of death for which a plaintiff may sue. In affirming this court's opinion in Knowles, the supreme court made very clear its agreement that "the plain meaning of the language used in the statute indicates that only personal representatives of the estate of a deceased resident whose death resulted from the deprivation or infringement of the decedent's rights may bring an action for damages under the statutory rights scheme." 898 So.2d at 6 (emphasis in original). As already noted, appellant attempts to fit her claim into the holding of Knowles by characterizing the nursing home's violation of the patient's bill of rights as the supervening cause of a different kind of death than Mrs. Neumann otherwise would have experienced. We hold this characterization to be incorrect.
The breach of Mrs. Neumann's rights that appellant alleged in this count is that measures were taken by nursing home staff to keep her alive that she did not want taken. The immediate wrong suffered was therefore akin to "wrongful prolongation of life." As appellee points out, the Supreme Court of Florida has previously approved of the proposition that finders of fact should not engage in such determinations, such as "to weigh the value of impaired life against the value of nonexistence." Kush v. Lloyd, 616 So.2d 415, 423 (Fla.1992)(affirming district court decision rejecting general damages for "wrongful life" claim due to "existential conundrum" raised by the issue).
We also affirm the other issue raised by appellant, the denial of her motion for prejudgment interest.
While admitting the loss at issue in this case included "something as abstract as the loss of the assurance of a natural death," appellant claims it is still governed by the loss theory described in Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212, 215 (Fla.1985).
*1134 Despite appellant's argument under the "loss theory," we hold that the trial court was correct that whether prejudgment interest is allowed depends on the nature of the damages claimed. Therefore, the fact that appellant recovered under a breach of contract theory should not automatically entitle appellant to prejudgment interest if the nature of damages is inappropriate for such interest.
In Aetna Casualty & Surety Co. v. Langel, 587 So.2d 1370 (Fla. 4th DCA 1991), the trial court awarded the plaintiff prejudgment interest on his claim against an uninsured motorist. The trial court did so on the basis that the action was in contract pursuant to the uninsured motorist provisions in the insurance policy rather than a personal injury action. Langel, 587 So.2d at 1373. We held the trial court erred because "although the [plaintiffs'] action was based upon a contract of insurance, it was still essentially one for the recovery of personal injury damages, and, accordingly, the [plaintiffs] were not entitled to pre-judgment interest." Id. at 1373-74 (quoting Cooper v. Aetna Cas. & Surety, 485 So.2d 1367, 1368 (Fla. 2d DCA 1986)); see also United Servs. Auto. Ass'n v. Strasser, 530 So.2d 1026, 1027 (Fla. 4th DCA 1988)(affirming denial of prejudgment interest).
Further, in Alvarado v. Rice, 614 So.2d 498, 499 (Fla.1993), the Supreme Court of Florida addressed the question, certified to it by this court, whether the claimant in a personal injury action is entitled to interest on past medical expenses. The trial court had denied prejudgment interest, and this court affirmed. Alvarado, 614 So.2d at 499. The supreme court stated:
It is well settled that a plaintiff is entitled to prejudgment interest when it is determined that the plaintiff has suffered an actual, out-of-pocket loss at some date prior to the entry of judgment. Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 215 (Fla. 1985). To date, cases recognizing a right to prejudgment interest have all involved the loss of a vested property right.
Id.
The supreme court concluded that unlike the plaintiffs in Argonaut and the other cases cited above, Alvarado had not suffered the loss of a vested property right. Id. at 500. The court approved the decision of this court affirming denial of prejudgment interest. Id. at 501.
The present case is similar to the uninsured motorist case of Langel. Although appellant's action was technically for breach of contract, the damages sought involved unliquidated personal injury damages. See Morales Sand & Soil L.L.C. v. Kendall Props. & Invs., 923 So.2d 1229, 1232 (Fla. 4th DCA 2006)(stating that "[d]amages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law")(quoting Bowman v. Kingsland Dev., Inc., 432 So.2d 660, 662 (Fla. 5th DCA 1983); Air Ambulance Prof'ls, Inc. v. Thin Air, 809 So.2d 28, 31 (Fla. 4th DCA 2002)) (reversing award of prejudgment interest on unliquidated breach of contract damages because "[p]rejudgment interest is allowed on only liquidated claims, that is, sums which are certain, but which the defendant refuses to surrender").
Affirmed.
HAZOURI and DAMOORGIAN, JJ., concur.
NOTES
[1] The theory of the breach of contract count was that the living will/advance directive was incorporated into the contract between Mrs. Neumann and Morse for her care.