NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

SP HEALTHCARE HOLDINGS, LLC;          )
ASC HOLDINGS, INC.; DR. RODOLFO       )
GARI, M.D.; LAURIE GARI; RODOLFO      )
GARI JR. GRANTOR RETAINED             )
ANNUITY TRUST and LAURIE GARI         )
GRANTOR RETAINED ANNUITY TRUST,       )
                                      )
        Appellants/Cross-Appellees,   )
                                      )
v.                                    )      Case Nos. 2D14-3503
                                      )                2D14-4458
SURGERY CENTER HOLDINGS, LLC;         )
ARMENIA AMBULATORY SURGERY            )      CONSOLIDATED
CENTER, LLC; SURGERY CENTER           )
HOLDINGS, INC.; and H.I.G MIDDLE      )
MARKETS, LLC,                         )
                                      )
        Appellees/Cross-Appellants.   )
_____)

Opinion filed December 9, 2016.

Appeals from the Circuit Court for
Hillsborough County; Paul H. Huey, Judge.

Stacy D. Blank; Joseph H. Varner, III;
Bradford D. Kimbro of Holland & Knight
LLP, Tampa, for Appellants/Cross-
Appellees.

Sylvia H. Walbolt and Steven C. Dupre of
Carlton Fields Jorden Burt, P.A., Tampa;
Alan Rosenthal, Natalie J. Carlos, and
Steven M. Blickensderfer of Carlton Fields

Jorden Burt, P.A., Miami, for Appellees/
Cross-Appellants.

MORRIS, Judge.

SP Healthcare Holdings, LLC; ASC Holdings, Inc.; Dr. Rodolfo Gari; Laurie Gari; Rodolfo Gari Jr. Granted Retained Annuity Trust; and Laurie Gari Grantor Retained Annuity Trust (collectively referred to as the appellants) appeal a final judgment entered in favor of Surgery Center Holdings, LLC; Armenia Ambulatory Surgery Center, LLC; Surgery Center Holdings, Inc.; and H.I.G. Middle Markets, LLC (collectively referred to as the appellees) on certain claims and an order imposing sanctions on the appellees. The appellees cross-appeal the final judgment and sanctions order. The final judgment was rendered after a bench trial was held on the parties' contract claims and after summary judgment was granted on the parties' tort claims. We conclude, without comment, that the arguments raised by the appellants are without merit. However, we agree with the appellees that the trial court erred in calculating damages in the final judgment, in failing to award prejudgment interest on the liquidated damages, and in failing to award the appellees an offset of their costs and fees incurred in this litigation against amounts owing pursuant to the earnout note. Accordingly, we reverse the decision of the trial court on these issues. We conclude that we do not have jurisdiction to consider the appellees' appeal of the sanction orders, and therefore dismiss that portion of this appeal.

## I.  FACTS

In 1996, Dr. Gari held a controlling interest in a pain relief center, an ambulatory surgery center, a surgery center, and an anesthesiology service, and by 2009, he held a controlling interest in eleven additional ambulatory surgery centers

(collectively referred to as the Companies).  In 2008, Dr. Gari learned that not all of the Companies' patients' claims were being paid in full by the patients' health insurance providers.  In spite of this, his employees were routinely closing out accounts after receiving only partial payments on the billed amounts.  Upon learning of this practice, Dr. Gari changed the Companies' collection practices by ensuring that no account was closed until reviewed by a supervisor, by requiring that staff review all accounts receivable (AR) every month, and by requiring that in-depth adjustments and analyses of the AR were conducted every quarter and at the end of the fiscal year.  Dr. Gari also implemented a new billing policy which required the Companies to charge all insurers the same amount for the same service even though the contracts with various insurers provided for different payment caps.

In 2009, Dr. Gari decided to sell the Companies.  Appellee H.I.G. Middle Markets, LLC (H.I.G.) initially offered $153,000,000 to purchase the Companies, but after reviewing the Companies' records, H.I.G. became concerned with the AR.  As a result, H.I.G. offered $100,000,000, which Dr. Gari rejected.  Ultimately the parties settled on a purchase price of approximately $132,000,000, comprising $120,000,000 to Dr. Gari, $2,700,000 deposited into an escrow account, and a potential $10,000,000 earnout payment to Dr. Gari based on earnings from twelve months of post-sale operations.  The parties executed an escrow agreement and an earnout payment promissory note along with the purchase agreement.  The purchase agreement also included a warranty of the Companies' audited financial statements for years 2006 through 2008 and the unaudited consolidated balance sheet, income statement, and cash flow statements for the first nine months of 2009 (ending on September 30, 2009).

The purchase agreement also included the following warranty of the Companies' AR:

> 4.24 Receivables. All accounts receivable reflected in the Interim Financial Statements and all accounts receivable of the Companies, collectively, accrued since the date of the Interim Financial Statements (the "Receivables"), resulted from the bona fide sale of inventory or services by the Companies, collectively, or represent other bona fide obligations in favor of the Companies, collectively. The Receivables (in the aggregate) are not subject to any pending or, to Sellers' knowledge, threatened defense, counterclaim, right of offset, returns, allowances or credits, except for payment discounts and contractual adjustments in the ordinary course of business except to the extent reserved against Receivables.

After the closing occurred on the purchase agreement, accountants at Grant Thornton, C.P.A.s, prepared the year-end financial statements on behalf of both the appellants and the appellees. The audit showed a net AR of $36,405,318 as of December 31, 2009. In 2011, Grant Thornton revised the 2009 audited financial statements. The revised net AR was adjusted to $22,370,287—a reduction of $14,035,031.

On December 14, 2010, the appellees submitted a notice of claim to appellants for $4,365,557 which represented out-of-pocket losses due to refunds of overpayments from Blue Cross Blue Shield, Aetna, and CIGNA. The refunds were the result of the appellants billing the various insurance providers in excess of the contractually permitted rates.

In June 2011, the appellees submitted an indemnification notice to the appellants for the overstated AR. The appellees alleged that the net AR at the time of closing was overstated by $14,035,031 based on Grant Thornton's revised audited

financial statements for 2009. The appellees further alleged that the prior erroneous AR amount included accounts that had already been fully collected by the appellants prior to closing but not removed from the net AR. Based on the Companies' performance, Dr. Gari would have been entitled to the earnout payment. However, the appellees claimed they were entitled to offset the entire amount of the earnout against their indemnification losses and refused to release the escrow funds or pay the earnout pending resolution of their indemnification claims. The appellants rejected the appellees' claims and litigation ensued.

The appellants sued the appellees for declaratory relief, specific performance of the purchase agreement, breach of contract for the appellees' failure to release the escrow funds and pay the earnout note, bad faith, and fraudulent inducement. The appellees countersued the appellants for declaratory relief, breach of contract, and abuse of process. The trial court entered a case management order providing for a bench trial on the parties' contract claims and a later jury trial on the parties' tort claims. After the bench trial, the trial court entered its findings of fact and rulings of law and equity in a partial final judgment, determining that the appellees prevailed on their contract claim for overstated AR while the appellants prevailed on their claim to the full earnout payment. The trial court ordered that the appellees shall recover from the appellants $11,207,632. The trial court also ordered that, pursuant to the terms of the purchase agreement, the judgment shall be satisfied by first releasing to the appellees the funds currently held in escrow in the amount of $2,944,000, then off-setting the remaining amount due against the $10,000,000 note, leaving a balance

due and owing to the appellants under the note in the amount of $1,736,368. The trial court denied the appellees any prejudgment interest on the indemnification award.

Subsequently, the appellees moved for summary judgment on the appellants' tort claims, arguing that those claims were barred as a matter of law as a result of the trial court's findings on the breach of contract claims. The trial court agreed and entered summary judgment in favor of the appellees on the tort claims. Thereafter, the appellants filed a motion for sanctions against the appellees alleging that the appellees engaged in egregious unethical behavior during the discovery phase of the litigation. A successor trial court judge[1] agreed, imposed monetary sanctions against the appellees, and reserved on the proper amount. The trial court then entered a final judgment as to all claims. However, the final judgment omitted the $11,207,632 indemnification award ordered in the partial final judgment. Additionally, although the appellants, the appellees, and the successor judge agreed that both the partial final judgment and final judgment reflected an incorrect amount held in escrow, the trial court refused to correct the final judgment to reflect the correct amount. The final judgment did not award the appellees any prejudgment interest and prohibited the appellees from offsetting any prevailing party attorney's fees and costs against any balance owed under the note.

## II.  ANALYSIS

**A.     The Final Judgment Contains Errors Which Must Be Corrected.**

It is undisputed that in the partial final judgment rendered after the trial on the breach of warranty claim, the presiding judge ordered that the appellees shall

---

[1]The successor judge was appointed after the trial was completed.

recover damages in the amount of $11,207,632 from the appellants. This amount does not appear in the successor judge's final judgment. It is also undisputed that the correct amount that was held in escrow was $2,701,264.30. The partial final judgment and final judgment erroneously state the escrow amount as $2,944,000 although the trial court was apprised of the error and asked to correct it.

The final judgment must be corrected to accurately reflect the amount due and owing to the appellants from the appellees. The correct escrow amount of $2,701,264.30 must be deducted from the judgment amount of $11,207,632, which results in a net amount of $8,506,367.70. When that amount is offset against the earnout promissory note of $10,000,000, as the presiding judge intended, there is a balance due from the appellees to the appellants of $1,493,633.30. The final judgment must be corrected accordingly. See, e.g., Plaza Builders, Inc. v. Regis, 502 So. 2d 918, 921-22 (Fla. 2d DCA 1986) (acknowledging that a trial court's findings and conclusions will not be disturbed if they are supported by competent, substantial evidence, but holding, in part, that the trial court's computation of damages was erroneous and remanding for a proper computation of damages); Javier v. Javier, 955 S.W.2d 224, 226 (Mo. Ct. App. 1997) ("A money judgment must specify with certainty the amount for which it is rendered, or if the amount is not stated, it must be ascertainable from the record to be enforceable by execution." (citation omitted)).

## B. The Appellees Are Entitled to Prejudgment Interest.

We review a trial court's denial of prejudgment interest de novo. See Wood v. Unknown Pers. Representative of Estate of Burnette, 56 So. 3d 74, 76 (Fla. 2d DCA 2011). "The purpose of the award of prejudgment interest is to make the plaintiff

whole from the date of the loss once the jury determines the defendant's liability for damages and their amount. Once the jury sets the amount of damages to be awarded, the damages are retroactively considered liquidated damages, and the plaintiff is entitled to prejudgment interest back to the date that the damages were due." Capitol Envtl. Servs., Inc. v. Earth Tech, Inc., 25 So. 3d 593, 597 (Fla. 1st DCA 2009) (citing Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212, 215 (Fla. 1985)).

Florida has adopted the "loss theory" approach to prejudgment interest. Under this theory, "neither the merit of the defense nor the certainty of the amount of the loss affects the award of prejudgment interest." May Plumbing Co., 474 So. 2d at 215; see also Reimbursement Recovery, Inc. v. Indian River Mem'l Hosp., Inc., 22 So. 3d 679, 682 (Fla. 4th DCA 2009); Berloni S.p.A. v. Della Casa, LLC, 972 So. 2d 1007, 1012 (Fla. 4th DCA 2008). Instead, the theory presumes that "the loss itself is a wrongful deprivation by the defendant of the plaintiff's property [and thus the] [p]laintiff is to be made whole from the date of the loss once a [court] has determined the amount of damages and [the] defendant's liability therefor." May Plumbing Co., 474 So. 2d at 215; see also Beach Terrace Ass'n, Inc. v. Wanda DiPaola Stephen Rinko Gen. P'ship, 27 So. 3d 147, 148 (Fla. 2d DCA 2010); Fid. & Guar. Ins. Underwriters, Inc. v. Federated Dep't Stores, Inc., 845 So. 2d 896, 903 (Fla. 3d DCA 2003). Once liquidated damages have been determined, a trial court must award prejudgment interest. May Plumbing Co., 474 So. 2d at 215; see also Summerton v. Mamele, 711 So. 2d 131, 133 (Fla. 5th DCA 1998) ("[I]f a plaintiff establishes that [it] sustained out-of-pocket loss, prejudgment interest must be awarded from the date of the loss. The trial court has no discretion with regard to awarding prejudgment interest and must do so applying the statutory rate

of interest in effect at the time the interest accrues." (citing May Plumbing Co., 474 So. 2d at 215)).

We recognize that prejudgment interest has not been awarded for breach of contract where a plaintiff's claims have involved mixed contract and tort claims. In Aetna Casualty & Surety Co. v. Langel, 587 So. 2d 1370 (Fla. 4th DCA 1991), the trial court awarded the plaintiff prejudgment interest on a claim against an uninsured motorist. In reversing the decision of the trial court, the Fourth District explained that "although the [plaintiffs'] action was based upon a contract of insurance, it was still essentially one for the recovery of personal injury damages, and, accordingly, the [plaintiffs] were not entitled to pre-judgment [sic] interest." Id. at 1374 (alterations in original) (quoting Cooper v. Aetna Cas. & Sur., 485 So. 2d 1367, 1368 (Fla. 2d DCA 1986)). But in the case before us, the claims were for breach of warranty and for fraud based on the breach of warranty. Accordingly, once the liquidated damages had been determined, the trial court had no discretion not to award prejudgment interest.

## C.     The Appellees Were Entitled to Offset Their Fees/Costs Against the Note.

The final judgment in this case included the following language:

> 6.  The Court reserves the right to enforce the terms of this Final Judgment if the Subordinated Promissory Note is not paid in full, according to its terms. Those payments may not be held to set-off against any potential attorney fee or cost awards reserved in this Final Judgment.

(Emphasis added.) However, section 6.7 of the parties' agreement clearly provides otherwise:

> 6.7 Exclusive Remedy. . . .  [T]he first source of recovery and recourse for indemnification claims of the Buyers . . . related to this Agreement shall be from the recovery of amounts under the Escrow Agreement. . . .  In the event a

> Promissory Note is issued to the Sellers, then the Buyers shall have no recourse against the Sellers until no further amounts are held in escrow pursuant to the Escrow Agreement and all amounts due under the Promissory Note have been reduced to zero. . . . [N]othing in this Agreement . . . shall limit or restrict any of the Parties' right to maintain or recover any amounts in connection with any action or claim based upon fraud or intentional misrepresentation.

(Emphasis added.) Moreover, section 7.1 of the agreement defines "losses" as follows:

> 7.1 Defined Terms. As used herein, the following terms shall have the following meanings: . . . "Losses" means, with respect to any person, any actual damage, liability, demand, claim, action, cause of action, cost, deficiency, penalty, fine or other actual loss or out-of-pocket expense (including reasonable attorneys' fees). . . .

(Emphasis added.) Indeed, section 5 of the promissory note provides for prevailing party attorney's fees and expenses to the appellants for having to take action to enforce the note in judicial proceedings. Under the reciprocity provisions of section 57.105(7), Florida Statutes (2009), the appellees are entitled to attorney's fees and costs for having to defend the action. Additionally, section 6(a) of the promissory note provides that any payments for "fees and expenses permitted under Section 5 of the Note" must be paid before payment of "any unpaid principal amount of the Note."

Accordingly, the language of the final judgment regarding setoff of the appellees' fees and costs against the note clearly contravenes the parties' express intent on this issue. When the parties to a contract have selected language to express their intent and when that language is clear and unambiguous, as it is in this case, the court cannot rewrite the contract. See Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995). The final judgment should be corrected to reflect the parties' expressed intent on this issue.

- 10 -

**D. Sanctions**

The successor judge in this case found that the appellees engaged in egregious conduct from the outset of the case which included their actions during the course of discovery proceedings. As a result, the successor judge entered an order finding that the appellants were entitled to their attorney's fees as a sanction against the appellees and reserving jurisdiction to determine the amount. The appellees appeal this order, but an order that only determines entitlement to attorney's fees and does not set the amount is a nonfinal and nonappealable order. Salem v. Abram, 868 So. 2d 1213, 1214 (Fla. 2d DCA 2004); see also Garcia v. Valladares, 99 So. 3d 518, 518 (Fla. 3d DCA 2011) ("Appellant, Maria Garcia, appeals from a [nonfinal] order finding entitlement to costs and attorney fees . . . . Because the order, however, does not determine the amount of such fees or costs, the order is a [nonfinal], [nonappealable] order. Indeed, the order appealed reserves jurisdiction to determine the amount at a future hearing. We, therefore, dismiss the appeal for lack of jurisdiction." (citations omitted)); Avis Rent A Car Sys., Inc. v. Newman, 641 So. 2d 915, 915-16 (Fla. 3d DCA 1994) ("The instant order merely determined the entitlement to attorney's fees without setting the amount. Accordingly, we dismiss the appeal without prejudice to allow Avis to appeal from the final order setting the amount of attorney's fees, when entered." (citations omitted)). Therefore, this court is without jurisdiction to consider the appellees' challenge to the successor judge's order determining entitlement, and accordingly, we dismiss that portion of the appellees' appeal. See Salem, 868 So. 2d at 1214 (affirming entry of final judgment, but dismissing portion of appeal challenging the trial court's determination of entitlement to attorney's fees).

### III. CONCLUSION

The final judgment is hereby affirmed in part and reversed in part. The appellees' appeal of the successor judge's order finding that the appellants are entitled to attorney's fees is dismissed, and this matter is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; dismissed in part; remanded.

KELLY and WALLACE, JJ., Concur.